1
2
3
4
5

Victor L. George, State Bar No. 110504
Wayne C. Smith, State Bar No. 122535
LAW OFFICES OF VICTOR L. GEORGE
20355 Hawthorne Blvd., First Floor
Torrance, California  90503
Telephone:  (310) 698-0990
Facsimile:  (310) 698-0995
E-mail:      vgeorge@vgeorgelaw.com
               wsmith@vgeorgelaw.com

6
7

Attorneys for Plaintiff,
PAULA GORDON

8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11
12
13

PAULA GORDON, an individual,

Plaintiff,

14

v.

15
16
17
18
19
20
21
22

NEXSTAR BROADCASTING,
INC., a business entity, form
unknown; KGET-TV 17, a
business entity, form unknown;
The CW NETWORK, LLC, a
business entity, form unknown;
TELEMUNDO 17.3, a business
entity, form unknown; ERIK
MENDOZA, an individual;
ALMA NAVARRETE, an
individual; DEREK JEFFERY, an
individual; and DOES 1 through
100, inclusive,

Defendants.

CASE NO. 17-CV-07967-KS
[Assigned to the Hon. Karen L.
Stevenson, Courtroom 580]

**FIRST AMENDED COMPLAINT
FOR DAMAGES**

1.  HARASSMENT (SEX);
2.  DISCRIMINATION IN
    VIOLATION OF FEHA,
    *CALIFORNIA GOVERNMENT
    CODE* §§12900, *et seq*.:
    A.  GENDER;
3.  VIOLATION OF PUBLIC
    POLICY;
4.  RETALIATION IN VIOLATION
    OF FEHA;
5.  INTENTIONAL INFLICTION
    OF EMOTIONAL DISTRESS.

23

**DEMAND FOR JURY TRIAL**

24
25

Complaint filed: September 22, 2017
Trial Date:       None Set.

26

27

28

Plaintiff PAULA GORDON, hereby complains and alleges against

Defendants, and each of them, as follows:

## GENERAL ALLEGATIONS

1.     Plaintiff PAULA GORDON, hereinafter referred to as Plaintiff, is and at all times mentioned herein, was an individual and a resident of the State of California (hereinafter, "GORDON").

2.     Plaintiff is informed and believes that Defendant NEXSTAR BROADCASTING, INC. (hereinafter "NEXSTAR") is a business entity, form unknown, and at all times mentioned herein, was and is authorized to do business in the State of California. NEXSTAR is located at 2120 L Street, Bakersfield, Kern County, CA 93301.

3.     Plaintiff is informed and believes and thereon alleges that Defendant The CW Network, LLC (hereinafter "CW"), is a business organization, form unknown, and at all times mentioned herein, was and is authorized to do business in the State of California. CW's headquarters is located at 3300 West Olive Avenue, Room 3071, Burbank, Los Angeles County, CA 91505.

4.     Plaintiff is informed and believes and thereon alleges that Defendant KGET-TV 17 (hereinafter "KGET"), is a business organization, form unknown, and at all times mentioned herein, was and is authorized to do business in the State of California. KGET is located at 2120 L Street, Bakersfield, Kern County, CA 93301.

5.     Plaintiff is informed and believes and thereon alleges that Defendant TELEMUNDO 17.3 (hereinafter "TELEMUNDO"), is a business organization, form unknown, and at all times mentioned herein, was and is authorized to do business in the State of California. Telemundo is located at 2120 L Street, Bakersfield, Kern County, CA 93301.

6.     Plaintiff is informed and believes and thereupon alleges that Defendant ERIK MENDOZA (hereinafter "MENDOZA") was at all times mentioned herein, an individual working in Kern County, State of California.

MENDOZA, was/is a Local Sales Manager, and the Local Sales Manager over Plaintiff, in the office at 2120 L Street, Bakersfield, Kern County, CA 93301. MENDOZA was Plaintiff's direct Supervisor/Manager, having full influence, authority, supervision and control over Plaintiff's job in all aspects, including pay raises, bonuses, hours, evaluations, and whether or not Plaintiff continues in her employment of Defendants.

7.     Plaintiff is informed and believes and thereupon alleges that Defendant ALMA NAVARRETE (hereinafter "NAVARRETE") was at all times mentioned herein, an individual domiciled in Kern County, State of California. NAVARRETE, was/is the General Sales Manager in the office at 2120 L Street, Bakersfield, Kern County, CA 93301. NAVARRETE was Plaintiff's Supervisor/Manager, having full influence, authority, supervision and control over Plaintiff's job in all aspects, including pay raises, bonuses, hours, evaluations, and whether or not Plaintiff continues in her employment of Defendants.

8.     Plaintiff is informed and believes and thereupon alleges that Defendant DEREK JEFFERY (hereinafter "JEFFERY") was at all times mentioned herein, an individual domiciled in Kern County, State of California. JEFFERY, was/is the General Manager in the office at 2120 L Street, Bakersfield, Kern County, CA 93301. JEFFERY was Plaintiff's Supervisor/ Manager, having full influence, authority, supervision and control over Plaintiff's job in all aspects, including pay raises, bonuses, hours, evaluations, and whether or not Plaintiff continues in her employment of Defendants.

9.     For four years, Plaintiff was employed as a local account executive for NEXSTAR/KGET/CW/TELEMUNDO.

10.     Plaintiff performed much work and a great deal of her duties in Los Angeles County. She regularly traveled to Los Angeles County for numerous work trainings. Additionally, Plaintiff alleges that many of her

clients, contacts, and potential clients were in Los Angeles County. Plaintiff would need to often visit CW/TELEMUNDO, etc. in Los Angeles County.

11.   Defendants, DOES 1 through 100, inclusive, are sued herein under fictitious names, their true names and capacities, whether individual, corporate, associate, or otherwise, being presently unknown to Plaintiff. Plaintiff will seek relief from this court to amend this complaint to designate the true names and capacities of defendants DOES 1 through 100, inclusive, when same have been ascertained. The defendants designated as DOES 1 through 100, inclusive, and each of them, are or were otherwise responsible for all of the acts hereinafter alleged.

12.   Plaintiff is informed and believes and thereupon alleges that NEXSTAR and KGET, CW, TELEMUNDO, MENDOZA, NAVARRETE, JEFFERY and each of them, are now and, at all times herein mentioned were alter egos, partners, co-owners, associates, joint venturers, principals and agents and/or employers-employees of each other and acted within the scope of such alter ego, partnership, association, joint venture, agency, and/or employment in performing the acts and omissions alleged in this complaint.

13.   At all times herein, Defendants, NEXSTAR, KGET, CW, TELEMUNDO, MENDOZA, NAVARRETE, and JEFFERY and each of them were the principals and agents, and employers and employees of each other, and were acting within the scope of their agency and employment and by and through their officers, managers, supervisors, agents and employees, and with each defendants' authorization, permission, consent and ratification.

14.   At all times, the actions by defendants, and each of them, were done under the authorization, consent, instruction and approval, express or implied, of each of the other and were duly ratified by defendants, and each of them, and imputed to each of them.

///

15.    Plaintiff is a female hired to perform in the business of television media sales.  Plaintiff, a single mother of three (3) children, was hired in December 2012 by Defendants as an "Account Executive." She was a superb salesperson who received numerous awards and great recognition from her many clients and employer.  Plaintiff was always an outstanding employee, received excellent evaluations whose $120,000 salary was based on commission only.

16.    Starting when Defendants hired MENDOZA in August 2013 as an Account Executive, from that point forward Plaintiff suffered from constant and egregious sex harassment from Defendants including, MENDOZA, all of which are violations of Plaintiff's individual rights and violation of her rights guaranteed by public policy, based on her gender.

17.    While Plaintiff worked for Defendants, Defendants tolerated, acquiesced, encouraged, failed to protect, failed to investigate and allowed to exist, a hostile, oppressive, dangerous and violent work environment for Plaintiff as created by MENDOZA. Defendants furthered such egregious behavior.  Plaintiff was subjected to a constant stream of sex harassment, including, inappropriate touching, and obscene and sexually vulgar comments and exhibitions. Numerous acts of harassment were performed  in front of other persons, including persons working both for and working with Defendants.  Some of the touching and comments include, but are not limited to:

- •    MENDOZA would constantly tell Plaintiff "I love your tits," "I love your boobs," "Can I just see them?," "you make me hard," "let's get it out of our system," "you really need to give me a blow job." MENDOZA would say, "Send me a video of you getting off." Plaintiff would shake her head no and try to ignore MENDOZA.

1
2
3
4
5
6
7

- In 2015, MENDOZA and Plaintiff drove to get coffee, MENDOZA reached over and put his right hand on Plaintiff's left thigh. Plaintiff disgusted, immediately pushed MENDOZA's hand away. MENDOZA had an erection and kept rubbing his penis in front of Plaintiff, moaned, and said Plaintiff made him "so hard." Plaintiff told him he was sick and could not wait to get away from him.

8
9
10

18.   In July 2016, MENDOZA was promoted to Local Sales Manager and became Plaintiff's supervisor. He then became additionally emboldened as his sex harassment became even more obscene:

11
12
13
14
15
16
17
18
19
20
21
22

- In August 2016, MENDOZA instructed Plaintiff to drive with him to meet a client on the basis that he was going to give Plaintiff this client's account. During the drive, MENDOZA rubbed his erect penis on top of his pants and said, "Oh my god, you make me so crazy, you make me so hard." MENDOZA then grabbed Plaintiff's leg and said, "We should go somewhere after," "you should suck my dick," and "let's get it out of our system." Plaintiff vehemently protested and told MENDOZA that she had to return to the office. During the sales call, MENDOZA would whisper comments to her like "you look good," in front of the client. Plaintiff was repulsed, but tried to keep her composure during the meeting.

23
24
25
26

- At a work event in September 2016, MENDOZA sat next to Plaintiff and he constantly grabbed Plaintiff's leg under the table in plain view of clients and co-workers. Plaintiff desperately pushed MENDOZA's hands off her legs.

27
28

- On two separate occasions, MENDOZA showed Plaintiff a video of him personally masturbating himself. The first time,

MENDOZA told Plaintiff that he had a dream about her and played a video from his phone of himself masturbating. The second video showed MENDOZA masturbating himself to orgasm. Plaintiff pushed the phone away and told MENDOZA to stop.

- On at least three separate occasions, while in the office bathroom MENDOZA took a cell phone "selfie" picture of his erection and then displayed the penis photos to Plaintiff.

- At least seven times, when Plaintiff was seated at her desk in her office, MENDOZA would rub up against Plaintiff while he had an erection. Plaintiff would push MENDOZA away, ask MENDOZA why was acting like this and reminded him that he had a girlfriend.

- MENDOZA would put his hands up Plaintiff's dress and grab her legs. Plaintiff would order him to stop.

- MENDOZA would go into Plaintiff's office almost every day, close her door and say one of his many sexual and vulgar comments and request Plaintiff to send him naked photos and videos of her.

19. Defendants had a culture of discriminating against women. In February 2016, Plaintiff complained to the JEFFERY, that the previous General Sales Manager, Adam Chase, would constantly threaten Plaintiff's job by stating he could take away any of her business accounts. Mr. Chase was aware that Plaintiff was a single mother of three children. Mr. Chase took away at least eight (8) of Plaintiff's accounts and inexplicably gave many of them to MENDOZA. After Plaintiff broke down into tears in front of JEFFERY, he told her "you are being way too emotional," "How could you come in here crying?," "I wouldn't go to my boss crying." Plaintiff left that meeting

saddened and in disbelief. In June 2016, once Mr. Chase left his position with Defendants, JEFFERY told Plaintiff that Mr. Chase "hated" Plaintiff because "he (Mr. Chase) hated women, particularly strong women."

20.     When MENDOZA was promoted to the Local Sales Manager in July 2016, Plaintiff described to NAVARRETE, Defendants' General Sales Manager (GSM), MENDOZA's constant egregious and sexually inappropriate comments and actions. NAVARRETE instructed Plaintiff, "Just ignore him."

21.     Additionally, MENDOZA had previously been investigated by Defendants for sexually harassing another subordinate. In November 2016, another female Account Executive, Alyssa Duran, reported that MENDOZA was sexually harassing her. Defendants did not even interview Plaintiff in regards to MENDOZA's behavior towards Duran, rather Defendants suggested instead that Plaintiff describe her "relationship" with her fellow female Account Executive. MENDOZA continued to work for Defendants through the "Duran" harassment investigation and MENDOZA was never suspended while Ms. Duran was on leave.

22.     After the Duran sex harassment investigation, Ms. Duran returned to work, NAVARRETE told Plaintiff, "we are going to make sure Duran quits. We aren't going to give her another account. She is out of here." Plaintiff learned what Defendants do to women who complain of sex harassment.

23.     In 2016, Plaintiff, described in great detail, to GSM s. NAVARRETE of MENDOZA's constant grotesque, offensive and vulgar sexual comments and physical touching, photos, and videos. NAVARRETE discouraged Plaintiff from filing a complaint with Defendants. NAVARRETE relayed the conversation she had with Plaintiff to GM JEFFERY.

24.     On January 12, 2017, NAVARRETE informed Plaintiff that JEFFERY wanted to meet with Plaintiff. In the meeting with NAVARRETE present, JEFFERY stated that NAVARRETE made him aware of

MENDOZA's sexual harassment and abuse of Plaintiff. JEFFERY asked, "Was this before and after MENDOZA became a manager?" Plaintiff said yes. JEFFERY then asked, "Just comments?" Plaintiff responded, "And physical." JEFFERY then said, "You should have done what my wife would have done, you should have kicked Erik in the balls." The meeting was ended abruptly by JEFFERY.

25.   Later that day, NAVARRETE went to Plaintiff's office and told Plaintiff, "You are jeopardizing my job by telling me these things about Erik." Plaintiff responded, "You can't pick and choose what you tell Derek. Why didn't you tell him about Erik showing me  pictures of his penis and videos of him masturbating?" General Sales Manager, NAVARRETE responded, "Don't tell me! I don't want to know!" This made Plaintiff feel even more alone and unprotected.

26.   On January 13, 2017, Plaintiff followed up with JEFFERY regarding MENDOZA's conduct. JEFFERY asked Plaintiff again, "Was it more than comments?" Plaintiff replied, "yes, as I told you, it was also physical. Alma knows everything." Plaintiff also explained, "I told Alma everything last year."

27.   After Plaintiff's numerous meetings and complaints both to JEFFERY and NAVARRETE, Defendants did not contact Plaintiff regarding her sexual harassment allegations and complaints. Plaintiff's sex harassment complaints were just ignored and MENDOZA remained Plaintiff's supervisor, working unabated on the management team.

28.   On January 24, 2017, Plaintiff informed JEFFERY that her medical doctor ordered her on a leave of absence to address Plaintiff's trauma and non-stop hostile workplace.

29.   In April 2017, Plaintiff voluntarily participated in an investigation conducted by an attorney who was hired by Defendants to investigate

1  Plaintiff's sex harassment claims. Plaintiff was immensely cooperative with the

2  investigation as she was interviewed on three occasions over a period of a

3  couple months by the attorney hired by Defendants.

4        30.    The investigation was finally concluded three months later in June

5  2017. The investigator found that Defendant Mendoza had sexually harassed

6  Plaintiff.

7        31.    Defendants demanded that Plaintiff immediately return to work.

8  However, Plaintiff was suffering severe emotional distress from the abuse and

9  mistreatment by Defendants. Plaintiff reasonably feared that if she returned to

10  work, she, like other sex harassment victims of Defendants, would be retaliated

11  against by the Local Sales Manager, her bosses, and the entire management

12  team. Plaintiff had seen it before as NAVARRETE has previously made

13  retaliatory comments regarding Ms. Duran, who complained of sexual

14  harassment, then was investigated, and then Ms. Duran was gone.

15        32.    On July 31, 2017, Plaintiff was fired in retaliation for her

16  numerous protected complaints made to Defendants.

17        33.    Plaintiff was replaced by a male, Lupe Carabajal, who

18  Defendants' knew had sexually harassed Plaintiff at a previous job. Mr.

19  Carabajal was previously interviewed by Defendants (to work for Defendants)

20  in the winter of 2016 by General Manager, JEFFERY and General Sales,

21  NAVARRETE. Both JEFFERY and NAVARRETE asked Plaintiff about her

22  experience with Mr. Carabajal. Plaintiff informed JEFFERY and

23  NAVARRETE several times that Mr. Carabajal had previously sexually

24  harassed her. JEFFERY and NAVARRETE later told Plaintiff on several

25  occasions that Mr. Carabajal was not hired because "of what he did to you."

26  From that point forward, during times when an account executive position was

27  open, JEFFERY and NAVARRETE would taunt Plaintiff and threaten to hire

28  Mr. Carabajal.

34.    Having to work for and under defendants, and each of them, and with defendant bosses, supervisors, officers, directors, owners and managers failing to address/remedy the situation, has caused and continues to cause Plaintiff great injuries, losses and damages.

35.    Plaintiff pursued her administrative remedies by filing claims with the California Department of Fair Employment and Housing (DFEH) for statutory violations including those for sex harassment, and gender discrimination  and was granted a "right to sue" prior to the filing of this complaint. Plaintiff amended her DFEH complaint.

36.    The unwelcome physical, mental, verbal and visual conduct made (and allowed to be made) by NAVARRETE/ JEFFERY/ MENDOZA/ Defendants created an intimidating, hostile and offensive workplace/ environment/ situation for Plaintiff, all to her past, present and future damages, injuries and losses.

37.    The tortuous, degrading and unwelcome acts, behavior and abuse that went unchecked, caused Plaintiff great fear, disgrace, constant concern, always looking over her shoulder, anxiety, paranoia and severe emotional distress which offensively, devastatingly and substantially intruded into and violated Plaintiff's privacy, causing her significant damage and loss.

38.    Plaintiff is now unemployed, receives no money and is no longer receiving the compensation and benefits she had been paid by Defendants:

a.    Average annual income of $120,000.00 per year;

b.    Annual bonuses;

c.    Full Medical coverage;

d.    Full Dental Coverage;

e.    Two weeks of vacation per year;

f.    Disability insurance; and

g.    401k.

39.     Because of Plaintiff's great fear, emotional distress, anxieties, physical symptoms, feelings of powerlessness and helplessness stemming from the physical and mental abuse, as well as lack of protection, discrimination, harassment, hostile work place, stalking, unwelcome, and tortuous conduct and conditions presented to her within her job duties in the work place, Plaintiff has, is and will be caused to suffer past, present and future damages and losses.

40.     The conduct of defendants and the conditions allowed to exist while Plaintiff worked were violative of public policy and laws of the State of California including, but not limited to: the Constitution of the State of California, including Article I section 8*; California Government Code* Sections 12900, *et seq*., including, but not limited to sections 12920, 12921, 12940, 12950, etc.

41.     As a result of the conduct of defendants and the conditions allowed to exist by Defendants while Plaintiff worked for them, Plaintiff was, is and will be caused to suffer damages, in an amount to be determined according to proof at trial, and which includes but is not limited to, past, present and future injuries, damages, severe emotional distress and losses, punitive damages, costs and attorney fees.

42.     As a result of Plaintiff's termination, Plaintiff has been denied all of the above-referenced compensation and benefits.

43.     Since her termination by Defendants, Plaintiff has not found comparable employable work and continues earning no money or benefits.

### FIRST CAUSE OF ACTION

### STATUTORY HARASSMENT

### (By Plaintiff Against All Defendants and Does 1 through 100)

44.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 43 and incorporates the same by reference as though fully set forth herein.

45.    Plaintiff pursued her administrative remedies by filing claims with the California Department of Fair Employment and Housing against all defendants herein, within one year of the continuing discrimination and the California Department of Fair Employment and Housing closed its file and granted the right to sue prior to the filing of this lawsuit.

46.    At all times set forth herein, and specifically including 2013 and continuing thereafter, Defendant's actions were violative of public policy and laws of the State of California including, but not limited to: the Constitution of the State of California, including Article I section 8; *California Government Code* Sections 1290, *et seq.*, including, but not limited to sections 12920, 12921, 12940, 12950, etc.

47.    As a result of the statutory violations, Plaintiff suffered damages, in an amount to be determined according to proof at trial, but in excess of the jurisdictional minimum of this Court and includes past, present and future damages, injuries, losses, punitive damages, costs and attorney fees.

48.    Defendants  NEXSTAR,  KGET,  CW,  TELEMUNDO, NAVARRETE, JEFFERY, and MENDOZA are employers within the meaning of *California Government Code* § 12926(d), and § 12940(h)(3).

49.    Plaintiff was exceptionally qualified for the position, having at all times performed the duties of the position with a high degree of competency and excellence.

50.    The Plaintiff was subjected to harassment and abuse as well as being denied rights and customary privileges of employment which other employees enjoyed.

51.    Defendant's conduct as herein-described was so severe and pervasive as to alter the terms and conditions of Plaintiff's employment. Although Plaintiff protested the acts, complained and informed Defendants that the above-described actions were unwelcome, begged for protection and

1  demanded the situation be remedied to stop this type of conduct, Defendants

2  failed to correct the problem, ignoring Plaintiff until finally choosing to reject

3  helping Plaintiff.

4       52.    Defendants' conduct as herein alleged violated the California Fair

5  Employment and Housing Act ("FEHA"), *California Government Code*,

6  including but not limited to: Section   12940(a),(f),(I), in that it constituted

7  unlawful harassment, and failure to prevent harassment.

8       53. As a result of the statutory discriminatory treatment and violations,

9  set forth herein by Plaintiff, Plaintiff suffered injuries, damages, economic

10 losses and emotional distress, past, present and future and has already and will

11 incur attorneys fees and costs in prosecuting this action.

12      54.    Because the acts taken toward Plaintiff were carried out by

13 managerial employees and partners of Defendants acting in a deliberate, cold,

14 callous and intentional manner in order to injure and damage Plaintiff, Plaintiff

15 requests the assessment of punitive damages against Defendants in an amount

16 according to proof at the time of trial.

17            **SECOND CAUSE OF ACTION**

18   **DISCRIMINATION IN VIOLATION OF FEHA, *CALIFORNIA**

19   ***GOVERNMENT CODE* §§12900, et seq., BASED ON:  (A) GENDER.**

20   **(By Plaintiff Against All Defendants NEXSTAR, KGET, CW,**

21   **TELEMUNDO  and DOES 1-50)**

22      55.    Plaintiff repeats and realleges the allegations set forth in

23 Paragraphs 1 through 54 and incorporates the same by reference as though fully

24 set forth herein.

25      56.    At all times mentioned herein, *Government Code*, §§12940-12965

26 *et seq.*, were in full force and effect and were binding upon Defendants.  Said

27 sections specifically required Defendants to refrain from discriminating against

28 any employee on the basis of  gender.

57.     Plaintiff is informed, believes and thereupon alleges that her gender was a substantial motivating factor contributing to Defendants' treatment of Plaintiff.

58.     To the extent that Plaintiff's gender was a substantial motivating factor contributing to Plaintiff's mistreatment/abuse by Defendants, said act by Defendants constitutes employment discrimination under the laws of the State of California, of which gender is a "protected class." Such discriminatory actions were each substantial factors in causing damages and injuries to Plaintiff as set forth in previous paragraphs.

59.     Under FEHA, *California Government Code §§ 12900 et seq.,* a person like Plaintiff, cannot be discriminated against based on her gender.

60.     Plaintiff is informed and believes and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents and employees of each of the remaining Defendants, and were in part acting within the course and scope of their employment.

61.     The conduct set forth herein above was extreme and outrageous and an abuse of the authority of Defendants, and each of them.  Said conduct was intended to cause severe emotional distress and was done in conscious disregard of the probability of causing such distress.  In particular, Defendants engaged in an intentional and dishonest course of conduct never helping or protecting Plaintiff due to Plaintiff's gender.

62.     As a direct result of the aforesaid acts of Defendants, Plaintiff lost, and will continue to lose, income and benefits, in an amount to be proven at trial. Plaintiff has become depressed, distressed, aggravated, anxious, humiliated, saddened, nervous and embarrassed. This wrongful termination is a substantial factor in causing damage and injury to Plaintiff as set forth above. As a direct result of the aforesaid acts of Defendants, Plaintiff has become mentally upset and has suffered, and will continue to suffer, mental and/or

1  emotional distress.   Thereby, Plaintiff claims general damages for mental

2  distress and aggravation in a sum according to proof at the time of trial.

3      63.   As a proximate result of Defendants' discriminatory conduct,

4  Plaintiff has and will incur attorneys' fees and costs, which she is entitled to

5  recover under *California Government Code* § 12965(b).

6      64.   Because the acts taken toward Plaintiff were carried out by

7  managerial employees and partners of Defendants acting in a deliberate, cold,

8  callous and intentional manner in order to injure and damage Plaintiff, Plaintiff

9  requests the assessment of punitive damages against Defendants in an amount

10  according to proof at the time of trial.

11                  **THIRD CAUSE OF ACTION**

12                  **VIOLATION OF PUBLIC POLICY**

13          **(By Plaintiff Against Defendants NEXSTAR, KGET, CW,**

14                  **TELEMUNDO and DOES 1-100)**

15      65.   Plaintiff repeats and realleges the allegations set forth in

16  Paragraphs 1 through 64 and incorporates the same by reference as though fully

17  set forth herein.

18      66.   The above referenced actions of Defendants constitutes a violation

19  of law by the abuse of Plaintiff in violation of the public policy of the State of

20  California as reflected in its laws and policies.   Said laws include, but are not

21  limited to, Article I, Section 8 of the Constitution, as well as *Government Code*

22  §12900, *et seq*.   Defendants were obligated to refrain from discharging

23  Plaintiff, or any employee, for reasons which violate or circumvent said

24  policies or objectives which underlie each.

25      67.   As a direct result of the aforesaid acts of Defendants, Plaintiff lost,

26  and will continue to lose, income and benefits, in an amount to be proven at

27  trial. This wrongful termination is a substantial factor in causing damage and

28  injury to Plaintiff as set forth above.

2c6380bf2a6cbd13

68.   As a direct result of the aforesaid acts of Defendants, Plaintiff has become mentally upset, distressed and aggravated and has suffered, and will continue to suffer, humiliation, embarrassment and mental and/or emotional distress.  Thereby, Plaintiff claims general damages for mental distress and aggravation in a sum according to proof at the time of trial.

69.   Because the acts taken toward Plaintiff were carried out by managerial employees and partners of Defendant acting in a deliberate, cold, callous and intentional manner in order to injure and damage Plaintiff, Plaintiff requests the assessment of punitive damages against Defendants in an amount according to proof at the time of trial.

## FOURTH CAUSE OF ACTION

## RETALIATION IN VIOLATION OF FEHA

### (By Plaintiff Against Defendants NEXSTAR, KGET, CW, TELEMUNDO and DOES 1 through 100)

70.   Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 69 and incorporates the same by reference as though fully set forth herein.

71.   Plaintiff is informed and believes and thereon alleges that Defendants retaliated against Plaintiff because Plaintiff was experiencing continuous sexual harassment and complained to Defendants of such a hostile, oppressive workplace, about MENDOZA's behavior, and managements lack of protection. In 2016 and 2017, Plaintiff complained to GSM NAVARRETE of MENDOZA's numerous comments, physical touching, and sexual photos and videos. In January 2017, even after Plaintiff's numerous meetings and complaints both to JEFFERY and  NAVARRETE, Defendants still did not contact Plaintiff regarding Plaintiff's sexual harassment allegations and complaints. Plaintiff's sex harassment complaints were simply ignored and MENDOZA remained Plaintiff's supervisor.  After written sex harassment

complaints were made to Human Resources in April 2017, Plaintiff voluntarily participated in an investigation conducted by an attorney who was hired by Defendants to investigate Plaintiff's claims. Plaintiff was perfectly cooperative with the investigation as Plaintiff was interviewed on three occasions, by Defendants' attorney, over a period of several months by Defendants' hired investigator. The investigation was finally concluded three months later in June 2017. The investigator found that Defendant Mendoza sexually harassed Plaintiff. Defendants insisted that Plaintiff immediately return to work. However, Plaintiff was suffering severe emotional distress and trauma from the grotesque, hostile workplace, and the sexual abuse and mistreatment by Defendants. Plaintiff reasonably feared that if she returned to work, she would be retaliated against (like Ms. Duran) by the Local Sales Manager, General Sales Manager, her bosses, and the entire management.  This was in part based on NAVARRETE's previous retaliatory comments regarding running Ms. Duran "out", based on Ms. Duran's complaints of sexual harassment and Ms. Duran rapid departure post-complaint.

72.   It is Plaintiff's legal right to seek all of her legal rights and remedies and attempt to protect herself from violations of the law, without being fired by her employers based on their violations of such statutory acts and the law.

73.   As a proximate result of Defendants' retaliatory conduct, Plaintiff has suffered harm, including lost earnings, bonuses, excellent benefits and other lucrative employment benefits, and emotional distress, humiliation, embarrassment and mental anguish, all to his damage in a sum to be ascertained at trial.

74.   In doing the acts set forth above, Defendants retaliated against Plaintiff  because Plaintiff, who was continually experiencing grotesque and appalling sexual harassment and sexual assault by MENDOZA,  addressed the

illegal acts to both GSM NAVERRETE and GM  JEFFERY, and even participated in a 3 month long investigation regarding MENDOZA/ Defendants' sexual harassment of Plaintiff.

75.    As a proximate result of Defendants' conduct, Plaintiff has and will incur attorneys' fees and costs, to which she is entitled to recover under California *Government Code* § 12965(b).

76.    The conduct of Defendants in retaliating against and terminating Plaintiff for reporting discrimination is oppressive, malicious and intentional and such conduct warrants the imposition of punitive damages in a sum according to proof at the time of trial.

## FIFTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (By Plaintiff Against All Defendants and Does 1 through 100)

77.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 76 and incorporates the same by reference as though fully set forth herein.

78.    At all times mentioned herein, Defendants engaged in outrageous conduct including sexually harassing, discriminatory, and tortious conduct against Plaintiff, PAULA GORDON.  These outrageous acts were done with the intent to cause severe emotional distress and/or with reckless disregard of the probability of causing such severe emotional distress.

79.    Each individual Defendant set forth in this cause of action acted with the consent, notice, authorization and ratification of Defendants and each officer, director or managing agent of Defendants engaged in and failed to prevent the outrageous conduct including sexually harassing, discriminatory, retaliatory and tortuous conduct against Plaintiff.

80.    These outrageous acts were done with the intent to cause emotional distress or with reckless disregard of the probability of causing such

emotional distress.

81.    As a result, Plaintiff was caused to suffer damages, including severe emotional distress and is entitled to recover damages therefor, in an amount to be determined according to proof at trial, but in excess of the jurisdictional minimum of this Court.

82.    As the conduct of defendants, and each of them, was done wilfully, recklessly, oppressively and in conscious disregard of the rights and safety of Plaintiff and with the authorization, notice and ratification of defendants, including each officer, director and managing agent of Defendants, Plaintiff is accordingly entitled to an award of punitive damages against defendants, and each of them, in an amount according to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff PAULA GORDON requests relief against Defendants, and each of them, as follows:

### **AS TO THE FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION:**

1.    That Plaintiff be awarded general and compensatory damages, including prejudgment interest, in an amount according to proof at trial;

2.    That Plaintiff be awarded costs of suit and interest incurred as provided by law;

3.    That Plaintiff be awarded statutory attorneys' fees;

4.    That Plaintiff be awarded punitive damages; and

5.    That this Court award such other and further relief as the Court deems just and proper.

///

///

FIRST AMENDED COMPLAINT FOR DAMAGES

## AS TO THE FIFTH CAUSE OF ACTION:

1.     That Plaintiff be awarded general and compensatory damages, including prejudgment interest, in an amount according to proof at trial;

2.     That Plaintiff be awarded costs of suit and interest incurred as provided by law;

3.     That Plaintiff be awarded punitive damages; and

4.     That this Court award such other and further relief as the Court deems just and proper.


Dated:  November 9, 2017      LAW OFFICES OF VICTOR L. GEORGE


                    */s/ Wayne C. Smith*

By: _____
                VICTOR L. GEORGE
                WAYNE C. SMITH
                Attorneys for Plaintiff
                PAULA GORDON

## DEMAND FOR JURY TRIAL

Plaintiff, PAULA GORDON, hereby demands trial by jury in this action now before the Court.


Dated:  November 9, 2017       LAW OFFICES OF VICTOR L. GEORGE


                                         */s/ Wayne C. Smith*
                               By: _____
                                         VICTOR L. GEORGE
                                         WAYNE C. SMITH
                                         Attorney for Plaintiff
                                         PAULA GORDON

FIRST AMENDED COMPLAINT FOR DAMAGES