# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULA GORDON,<br><br>    Plaintiff,<br><br>v.<br><br>NEXSTAR BROADCASTING, INC., et al.,<br><br>    Defendants. | Case No.: 1:18-cv-0007 - DAD - JLT<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY<br><br>(Docs. 69, 71) |

Paula Gordon contends she suffered sexual harassment as an employee of the defendants. She alleges the defendants are liable sexual harassment, discrimination and retaliation in violation of the Fair Employment and Housing Act, violation public policy, and intentional infliction of emotional distress. Plaintiff seeks to compel additional discovery, including deposition testimony and the production of documents, related to an investigation performed regarding her claims. Nexstar contends Plaintiff is not entitled to this additional information. (Doc. 90)

The Court finds the matter suitable for decision without oral argument. The Court considered the filings of the parties and conducted an in camera review of the documents discussed by the plaintiff in her motion. Accordingly, the motion is taken under submission pursuant to Local Rule 230(g). For the following reasons, Plaintiff's motion to compel discovery is **GRANTED in PART**.

I.  **Background**

Plaintiff alleges she was hired in December 2012 as an account executive, "to perform in the

1

business of television media sales," and her "$120,000 salary was based on commission only." (Doc. 14 at 5, ¶ 15) She contends that after the defendants hired Erik Mendoza as a sales manager in August 2013, she "suffered from constant and egregious sex harassment." (*Id.*, ¶ 16) Plaintiff asserts she "was subjected to a constant stream of sex harassment, including, inappropriate touching, and obscene and sexually vulgar comments and exhibitions." (*Id.*, ¶17) She alleges that "acts of harassment were performed in front of other persons, including persons working both for and working with Defendants." (*Id.*) According to Plaintiff, "Defendants "tolerated, acquiesced, encouraged, failed to protect, failed to investigate and allowed to exist, a hostile, oppressive, dangerous and violent work environment for Plaintiff as created by [Mendoza]." (*Id.*)

Plaintiff alleges that in February 2016, she complained to her supervisor Derek Jeffery, the General Manager of Nexstar, that "Adam Chase, would constantly threaten Plaintiff's job by stating he could take away any of her business accounts." (Doc. 14 at ¶¶ 8, 19) She asserts, "Mr. Chase took away at least eight (8) of Plaintiff's accounts and inexplicably gave many of them to [Mendoza]." (*Id.* at 7, ¶19) Plaintiff reports she cried in front of Jeffrey, who responded that Plaintiff was "being way too emotional" and said he "wouldn't go to [his] boss crying." (*Id.*) Plaintiff asserts that "[i]n June 2016, once Mr. Chase left his position with Defendants, [Jeffery] told Plaintiff that Mr. Chase 'hated' Plaintiff because 'he (Mr. Chase) hated women, particularly strong women.'" (*Id.* at 8, ¶19)

She asserts that in July 2016, Mendoza was promoted to local sales manager, a position which made him Plaintiff's supervisor. (Doc. 14 at 6, ¶18) Plaintiff alleges that at the time of the promotion, she described Mendoza's "constant egregious and sexually inappropriate comments and actions" to Alma Navarrete, the General Sales Manager and another supervisor over Plaintiff. (*Id.*, ¶¶ 7, 20) Navarrete told Plaintiff to "[j]ust ignore him." (*Id.* at 8, ¶ 20) She contends that year, she also described Mendoza's "offensive and vulgar sexual comments and physical touching, photos and videos to Navarrete, who "discouraged Plaintiff from filing a complaint with Defendants." (*Id.*, ¶ 23) Plaintiff asserts that Navarrete reported this conversation to Jeffery. (*Id.*)

According to Plaintiff, Mendoza was "investigated by Defendants for sexually harassing another subordinate" after another female account executive, Alyssa Duran, reported Mendoza as sexually harassing her in November 2016. (Doc. 14 at 8, ¶ 21) Plaintiff asserts she was not interviewed

related to Mendoza's behavior toward Duran but was instead asked to "describe her 'relationship' with her fellow female Account Executive." (*Id.*) She alleges Ms. Duran was on leave during the investigation while Mendoza kept working, and after the leave ended, Navarrete told Plaintiff: "[W]e are going to make sure Duran quits. We aren't going to give her another account. She is out of here.'" (*Id.*, ¶ 22) Plaintiff contends that from this, she "learned what Defendants do to women who complain of sex harassment." (*Id.*)

On January 12, 2017, Navarrete told Plaintiff that Jeffery wanted to meet with her. (Doc. 14 at 8, ¶ 24) Plaintiff asserts that during the meeting, Jeffery informed Plaintiff that Navarrete had reported Plaintiff's complaints of sexual harassment and abuse by Mendoza." (Doc. 14 at 8-29, ¶ 24) Jeffery asked Plaintiff if Mendoza made "just comments," to which Plaintiff responded the harassment was also physical. (*Id.* at 9, ¶ 24) According to Plaintiff, Jeffrey responded, ""You should have done what my wife would have done, you should have kicked Erik in the balls." (*Id.*) Jeffrey then "abruptly" ended the meeting with Plaintiff and Navarrete. (*Id.*) Later that day, Navarrete went to Plaintiff and said Plaintiff was jeopardizing [Navarrete's] job by telling her the information about Mendoza." (*Id.*, ¶ 25) In response, Plaintiff told Navarrete that she could not "pick and choose" what information she told Jeffrey and asked why Navarrete did not tell Jeffrey about Mendoza "showing pictures of his penis and videos of him masturbating." (*Id.*) According to Plaintiff, Navarrete then responded: "Don't tell me! I don't want to know!" (*Id.*)

Plaintiff asserts she again met with Jeffery regarding Mendoza's conduct the following day, on January 13, 2017. (Doc. 14 at 9, ¶ 26) Jeffery again asked Plaintiff whether it "[w]as … more than just comments." (*Id.*) She alleges that she responded, "yes, as I told you, it was also physical. Alma [Navarrete] knows everything." (*Id.*) Plaintiff added, "I told Alma everything last year." (*Id.*) She contends that after the meetings with Jeffery and Navarrete, her "sex harassment complaints were just ignored" and "Defendants did not contact Plaintiff regarding her sexual harassment allegations and complaints." (*Id.*, ¶ 27)

On January 24, 2017, Plaintiff fold Jeffery "that her medical doctor ordered her on a leave of absence to address Plaintiff's trauma and non-stop hostile workplace." (Doc. 14 at 9, ¶ 28) In April 2017, while Plaintiff remained on leave, she "voluntarily participated in an investigation conducted by

an attorney who was hired by Defendants to investigate Plaintiff's sex harassment claims." (*Id.* at 9-10, ¶ 29) She asserts the investigation concluded in June 2017, and "[t]he investigator found that Defendant Mendoza had sexually harassed Plaintiff." (*Id.*, ¶ 30)

According to Plaintiff, "Defendants demanded that Plaintiff immediately return to work." (Doc. 14 at 10, ¶ 31) She asserts that she "was suffering severe emotional distress from the abuse and mistreatment by Defendants," and "feared that if she returned to work, she, like other sex harassment victims of Defendants, would be retaliated against by the Local Sales Manager, her bosses, and the entire management team." (*Id.*) On July 31, 2017, Plaintiff was fired, and replaced by Lupe Carbajal, "who Defendants[] knew had sexually harassed Plaintiff at a previous job." (*Id.*, ¶¶ 32- 33)

Plaintiff filed claims with the California Department of Fair Employment and Housing, which "granted the right to sue." (Doc. 14 at 13, ¶ 45) On September 22, 2017, Plaintiff filed a complaint in the Los Angeles County Superior Court. (*See* Doc. 1 at 2, ¶ 1) Plaintiff identified the following causes of action: (1) statutory harassment, (2) gender discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), (3) violation of public policy, (4) retaliation in violation of FEHA, (5) and intentional infliction of emotional distress. (*See id.* at 10, 19-26)

Nexstar filed a notice of removal on October 31, 2017, thereby removing the action to the Central District of California. (Doc. 1) Plaintiff filed an amended complaint (Doc. 14), after which she also voluntarily dismissed The CW Network as a defendant (Doc. 25) and voluntarily dismissed the first cause of action for harassment as to Derek Jeffery and Alma Navarrete (Doc. 26). Thus, the defendants remaining in the action are Nexstar Broadcasting, Telemundo 17.3, KGET-TV 17, and Erik Mendoza. (*See* Doc. 14 at 10) On December 28, 2017, the Central District transferred the action to the Eastern District of California, thereby initiating the action before this Court. (Doc. 45) T

On January 10, 2018, Nexstar filed its Answer, denying Plaintiff's allegations of wrongful conduct. (Doc. 50 at 2) In addition, as its Eighth Affirmative Defense, Nexstar stated: "Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred in whole or in part because Defendant exercised reasonable care to prevent and correct promptly any alleged unlawful behavior, including conducting a prompt and thorough investigation after receiving Plaintiff's workplace complaint." (*Id.* at 8)

The Court issued new civil case documents and set a scheduling conference for April 2, 2018. (*See* Docs 48, 56) At the scheduling conference, the parties were directed to complete non-expert discovery no later than February 15, 2019. (Doc. 58 at 2) The parties began discovery and participated in mid-discovery status conference with the Court on September 10, 2018. (Doc. 64) At that time, Plaintiff indicated she had served "a request for production and special interrogatories on Defendant Nexstar…" and Nexstar reported the company had "responded to all pending discovery requests to date." (Doc. 63 at 1, 2) Nexstar's production included the investigation report and "entire investigation file, including the investigator's notes, outline, written questions, and correspondence with all witnesses interviewed, with the limited exception of communications between defense counsel Angel Sevilla and [the] investigator…." (Doc. 90 at 14) As to the information withheld, Nexstar provided privilege logs. (*Id.*; *see also* Doc. 90-4)

Plaintiff now seeks additional discovery related to the investigation performed by Nexstar. The Court held an informal telephonic conference with the parties on April 8, 2019. (Doc. 88) Because the dispute was not resolved, Plaintiff was authorized to file a motion to compel the additional discovery. (Doc. 88) On April 12, 2019, Plaintiff filed a notice of the motion now before the Court. (Doc. 89) The parties filed a joint statement regarding the discovery dispute on May 6, 2019. (Doc. 91)

**II.     Scope of Discovery**

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure. In relevant part, Rule 26(b) states:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party' claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevance is interpreted broadly, based on the general principal that litigants have a right to 'every man's evidence' . . . and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search

for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993), quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950) (internal citation omitted).

A party seeking discovery may move for an order compelling an answer when a deponent fails to answer a question. *See* Fed. R. Civ. P. 37(b). Once the party seeking discovery establishes that a request seeks relevant information, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Global Ampersand, LLC v. Crown Eng'g & Constr.,* 261 F.R.D. 495, 499 (E.D. Cal. 2009), quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D 281, 283 (C.D. Cal. 1998); *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (requiring defendants "to carry heavy burden of showing why discovery was denied").

### III.     Discussion

Nexstar reports that when the company responded to Plaintiff's request for production of documents, it "produced 90% of EXTII's investigation file, including the investigator's preliminary and final reports, notes, outline, written questions, witness statements, and correspondence with all witnesses interviewed." (Doc. 90 at 12) Nexstar also produced privilege logs identifying withheld the documents, including: communications between the investigator, Allison Underwood (a licensed attorney), and Nexstar's counsel; documents identified as "attorney work product," such as an interview chart and a draft investigation report containing attorney notes; and notes that included communications regarding the scope of the investigation by Ms. Underwood. (*See, e.g.,* Doc. 90-4 at 2)

Plaintiff maintains the investigation "was controlled and limited by Nexstar's present defense counsel, who refused to allow the investigator… to speak with Ms. Duran." (Doc. 90 at 8) Plaintiff deposed Ms. Underwood and asserts that "Ms. Underwood was precluded from answering questions regarding her communications with Defense Counsel." (*Id.*) According to Plaintiff, there was "no attorney-client relationship between EXTTI and Jackson Lewis or Nexstar," such that the identified communications would be privileged. (*Id.* at 9) In addition, Plaintiff asserts that Nexstar "was required to produce the entirety of the discovery file based on the holding of *Wellpont v. Superior Court* (1997) 59 Cal.App.4th 110," because Nexstar raised its investigation as an affirmative defense. (*Id.* at 10) Consequently, Plaintiff asserts that she is entitled to further deposition testimony Ms. Underwood.

(*See id.* at 8-12) In addition, Plaintiff seeks to compel Nexstar to produce documents withheld from the investigation file, including:

- communications to Defense Counsel regarding the Duran investigation;
- communications about the any request by Ms. Underwood to interview Ms. Duran and responses thereto;
- any question posed at deposition to Ms. Underwood that relate to the scope of the investigation, including any but not limited to communications related to her request to interview Ms. Duran;
- the retainer agreement and;
- numerous documents identified on Defendant's Privilege Logs (PRIV 03, PRIV05, 0000404, 000423, 000436, 2100207, 2100762, 1302124, 2100551, 900012, 9900030, 900028, 900187, 900188, 900189, 900391, [and] 900106 that related to the "scope" of the investigation.[1]

(Doc. 90 at 12)

Nexstar maintains that it is not obligated to disclose the communications, asserting its "defense counsel made those communications in anticipation of litigation." (Doc. 90 at 12) Nexstar observes that in *Kaiser Foundation Hospitals v. Superior Court,* 66 Cal. App. 4th 1217, 1226-27 (1998), the Court of Appeals held the privilege is not "waived by the employer's pleading of the adequacy of its prelitigation investigation as a defense to an action for employee discrimination or harassment." (*Id.*)

### A. Attorney-Client Privilege

The attorney-client privilege protects communications "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir.2010). Because the content of the client's communication would be known if the attorney's advice was not also protected, the rule prohibits this disclosure as well.

---

[1] Though not discussed by either party, the Court notes not all of the documents identified here are "related to the 'scope' of the investigation," because, according to the plaintiff, some were created before Nexstar even contemplated conducting an investigation. (Doc. 90-2 at 78, document numbers 2100207, 2100762, 1302124, 2100551) Plaintiff offers no discussion or analysis related to these documents or the other documents not reviewed by the Court in camera. Though the defense bears the burden of demonstrating the applicability of a privilege, the plaintiff has failed to "put in play" the documents not reviewed by the Court by failing to assert in any fashion how the information contained in them bear on liability or damages. The Court declines to manufacture arguments for her. Thus, the motion as to these documents is **DENIED** as abandoned.

7

*Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977).

Documents prepared by clients to adequately inform an attorney about the factual situation so that the lawyer can render reliable advice, are protected. This protection is provided when the statements "are based on or would tend to reveal the client's confidential communications." *Matter of Fischel*, 557 F.2d at 211. As such, communications to counsel may be protected by the attorney-client privilege if they were made for purposes of evaluating the scope of the investigation and in anticipation of litigation.

### B. Work-Product

The immunity from disclosure provided by work-product doctrine applies to documents prepared by counsel which reflect the attorney's mental impressions in preparation for or during litigation. *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011). "To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" *Id.* at 568 (citation omitted). Where documents are prepared for reasons in addition to the prospect of litigation, the party asserting the privilege must demonstrate the document was prepared "because of" litigation. *Id*.

Work product protection, unlike attorney client privilege, is not absolute and can be overcome by a showing of substantial need and inability to obtain the equivalent of the materials through other means. Fed. R. Civ. Pro. 26(b)(3). Nevertheless, in ordering discovery of such work product the court must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

Nexstar maintains the documents from its counsel, Mr. Sevilla, "to Ms. Underwood (which Plaintiff now seeks) necessarily contains Mr. Sevilla's mental impressions, conclusions, or legal opinions in anticipation of litigation." (Doc. 90 at 16) Nexstar maintains Mr. Sevilla "made those communications in anticipation of litigation." (*Id.* at 12) As such, the Court finds the documents identified on the privilege log such as "[n]otes containing attorney client communicaiton(sic)" and an interview chart (*see* Doc. 90-4 at 2) are protected under the work-product privilege.

### C. Analysis

As noted above, Plaintiff relies in part on *Wellpoint Health Networks, Inc. v. Superior Court of*

*Los Angeles County*, 59 Cal. App. 4th 110 (1997) to support the production of documents and additional discovery. In *Wellpoint*, the plaintiff filed an initial complaint and a law firm was brought in to investigate. The court found that hiring the law firm created a prima facie presumption that the attorney-client privilege applied. Nevertheless, because the defendant pointed to the investigation to show that it took reasonable corrective action, the court concluded privilege was waived. *Id.*, 59 Cal. App. 4th at 123. The court explained:

> If a defendant employer hopes to prevail by showing that it investigated an employee's complaint and took action appropriate to the findings of the investigation, then it will have put the adequacy of the investigation directly at issue, and cannot stand on the attorney-client privilege or work product doctrine to preclude a thorough examination of its adequacy.

*Wellpoint*, 59 Cal. App. 4th at 128. The court also cautioned, however, that there should not be a "blanket" nullification of the privilege and a plaintiff should not have "carte blanche access" to the defendant's investigative file. *Id.* at 122. Rather, documents may be withheld upon review by the court. *Id.* Thus, the court in *Wellpoint* determined it was error for the trial court to require the production of "all documents… pertaining to the… prelitigation investigation," and indicated a privilege log should be prepared by the defendant. *Id.* at 130.

In *Kaiser*, upon which Nexstar relies, the court distinguished *Wellpoint* from the facts before it, because the investigation was performed by a non-attorney human resources specialist. *Kaiser Foundation*, 66 Cal. App. 4th 1217 (1998). In *Kaiser*, the employer turned over the human resources report—including over 90% of its investigation-related documents—but withheld some attorney-client communications. *See id.* at 1225. The plaintiff sought to compel the production of the remainder of the documents and the trial court granted the motion. The appellate court found this was an error, because

> if an employer has produced the substance of relevant in-house investigations performed by nonattorney personnel and seeks only to protect specific communications between those personnel and the employer's attorneys, the protections afforded by the law for communications between attorneys and their clients are not waived by the employer's pleading of the adequacy of its prelitigation investigation as a defense to an action for employee discrimination or harassment.

*Id.*, 66 Cal.App.4th 1217, 1219-1220. Further, the *Kaiser* appellate court held "disclosure of such privileged communications is simply not essential for a thorough examination of the adequacy of the

1 investigation or a fair adjudication of the action." *Id.* at 1227.

2 The analysis here must begin with a determination as to which attorney Nexstar is attempting to assert a privilege. Though Ms. Underwood was an attorney, Nexstar does not seek to assert the attorney work product privilege as to her efforts. Rather, Nexstar is asserting an attorney-client relationship with its defense counsel, Mr. Sevilla, and is asserting that his work product should be protected. As framed, the factual circumstance is precisely that discussed in *Kaiser* and is distinguished from *Wellpoint*, in which the defendant had not produced any portion of the investigation file and relied upon the privilege to refuse to do so.

As in *Kaiser*, Nexstar has produced more than 90% of the investigation file. (*See* Doc. 90 at 12) The remaining documents were withheld on the grounds of attorney-client privilege or were identified as attorney work product. The communications from Mr. Sevilla to Ms. Underwood clearly are protected because they "would necessarily include Mr. Sevilla's mental impressions and evaluations as defense counsel." (*Id*. at 13) Such communications related to an investigation—even where the defendant has placed the scope and quality of its investigation in issue—are clearly protected and may be withheld. *See Kaiser*, 66 Cal. App. 4th at 1227 ("neither the attorney-client privilege nor the work product doctrine has been waived unless it is established through other discovery that a significant part of any particular communication has already been disclosed to third parties"*)*. For the same reasons, communications by Ms. Underwood to Mr. Sevilla, to the extent they reflect Mr. Sevilla's mental processes, are protected.

The Court has conducted an in camera review of certain of the documents. (See Doc. 96) The Court finds that PRIV03 shall be produced in redacted form. The defense is entitled to redact the entirety of paragraphs 2 and 19. Nexstar shall provide a redacted copy of PRIV04 (the retainer agreement) with paragraph 4 obliterated. The Court does not find that the remainder of these documents implicate either an attorney-client communication or attorney work-product, given the extent of the disclosure by Nexstar thus far. Indeed, PRIV04 appears to be a boilerplate document prepared by EXTTI, with the exception of paragraph 4, which appears to reflect attorney work product.

Nexstar shall also produce 900344. There is no showing how this document is privileged.

Though Ms. Bush is described as "Associate Counsel & VP Human Resources," the Court has confirmed that Ms. Bush has been an "inactive" member of the California Bar since 2000[2] and, despite this Nexstar fails to demonstrate that her work product is protected. Inactive members of the California Bar are ineligible to practice law. Z.A. v. San Bruno Park Sch. Dist., 165 F.3d 1273, 1275 (9th Cir.1999) ["In the state of California, a person must be an active member of the California State Bar in order to practice law."]; Tavlor v. Chaing, 2009 WL 453050, at *3 (E.D.Cal. Feb. 23, 2009) [The practice of law extends to other activities beyond court appearances.]; Cal. Bus. & Prof.Code, at § 6125 ["No person shall practice law in California unless the person is an active member of the State Bar."]; Rules of the State Bar of California, Title 2, Rights and Responsibilities of Members, Rule 2.30(B) [inactive members prohibited from "occupying a position in the employ of or rendering any legal service for an active member, or occupying a position wherein he or she is called upon in any capacity to give legal advice or counsel or examine the law or pass upon the legal effect of any act, document or law"].

As to the remaining documents, they clearly fall within the attorney work product and/or attorney-client privilege. Also, the plaintiff is not entitled to further deposition responses from Ms. Underwood to the extent she seeks information about the content of the discussions between defense counsel and Ms. Underwood.

**IV.    Conclusion and Order**

Based upon the foregoing, the Court **ORDERS**: Plaintiff's motion to compel additional discovery (Docs. 89, 90) is **GRANTED in PART**. Nexstar SHALL produce the following:

1.   PRIV03 with the entirety of paragraphs 2 and 19 redacted;

2.   PRIV04 (the retainer agreement) with paragraph 4 obliterated; and

3.   Document 900344;

///

///

---

[2] The court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). The record of the California State Bar is a source whose accuracy cannot reasonably be questioned.

As to the remaining documents, the motion is **DENIED**.

IT IS SO ORDERED.

Dated: **May 18, 2019**         **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE