1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PAULA GORDON,                          No.  1:18-cv-00007-DAD-JLT

12                  Plaintiff,               ORDER GRANTING DEFENDANT
                                            NEXSTAR'S MOTION FOR PARTIAL
13        v.                                 SUMMARY JUDGMENT, DENYING
                                            DEFENDANT NEXSTAR'S ALTERNATIVE
14   NEXSTAR BROADCASTING, INC., et          MOTION AS MOOT, AND DENYING
     al.,                                    DEFENDANT MENDOZA'S MOTION FOR
15                                           PARTIAL SUMMARY JUDGMENT AS
                  Defendants.                MOOT
16
                                            (Doc. Nos. 100, 102)
17

18        Before the court are the motions for partial summary judgment filed by defendant Nexstar

19   Broadcasting, Inc. ("Nexstar") and defendant Erik Mendoza (collectively, "defendants") on June

20   21, 2019.[1]  (Doc. No. 100, 102.)  A hearing on the pending motions was held on September 17,

21   2019.  (Doc. No. 113.)  Attorney Wayne Smith appeared telephonically on behalf of plaintiff

22   Paula Gordon ("plaintiff"), attorneys Angelito Sevilla, Dylan Carp, and Stephanie Yang appeared

23   telephonically on behalf of defendant Nexstar, and attorney Cheryl Schreck appeared

24   telephonically on behalf of defendant Mendoza.  Following the hearing, the motion was taken

25   _____
     [1]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
26   overwhelming caseload has been well publicized and the long-standing lack of judicial resources
     in this district has reached crisis proportion.  Unfortunately, that situation sometimes results in the
27   court not being able to issue orders in submitted civil matters within an acceptable period of time.
     This situation is frustrating to the court, which fully realizes how incredibly frustrating it is to the
28   parties and their counsel.

                                              1

1  under submission.  For the reasons explained below, defendant Nexstar's motion for partial

2  summary judgment on the merits of plaintiff's claims will be granted, defendant Nexstar's

3  alternative motion for partial summary judgment on its affirmative defenses will be denied as

4  having been rendered moot, and defendant Mendoza's motion for partial summary judgment on

5  the same affirmative defenses will also be denied has having been rendered moot.

6  **BACKGROUND**

7  **A.    Factual Background**[2]

8  In August 2012, plaintiff Gordon began her employment as an Account Sales Executive

9  for KGET-TV, a local television news station in Bakersfield, California.  (JUF ¶ 2.)  In February

10  2013, defendant Nexstar acquired KGET-TV, and plaintiff became a Nexstar employee whose

11  primary job duty was to sell advertising space to local businesses for on-air broadcasts.

12  (JUF ¶¶ 1–3.)

13  Defendant Mendoza worked at KGET as an Account Executive from August 2013 to July

14  2016 and as the Local Sales Manager from July 2016 until Nexstar terminated his employment in

15  June 2017.  (JUF ¶¶ 7, 11, 18.)  Similarly, Alma Navarrete worked at KGET as the Local Sales

16  Manager from June 2014 to July 2016 and as the General Sales Manager from July 2016 until

17  Nexstar terminated her employment on August 1, 2018.  (JUF ¶ 6.)  At all relevant times, Derek

18  Jeffery worked at KGET as the General Manager of the station.[3]  (JUF ¶ 4.)  At all relevant times,

19  Terri Bush worked at Nexstar's headquarters in Dallas, Texas as Associate Counsel and Senior

20  Vice President of Human Resources.  (JUF ¶ 5.)

21  Around the time that defendant Mendoza was interviewed for his promotion to Local

22  Sales Manager in July 2016, plaintiff told Ms. Navarrete that she thought defendant Mendoza was

23  _____

24  [2]  The relevant facts that follow are derived primarily from the parties' joint statement of
undisputed facts (Doc. No. 100-3 ("JUF")), and the undisputed facts as stated by defendant

25  Nexstar and responded to by plaintiff (Doc. No. 108-1 ("NUF")).  The court notes that citations to
defendant Mendoza's statement are not necessary because defendant Mendoza's statement of

26  undisputed facts (Doc. No. 108-2) is substantively the same as Nexstar's statement.

27  [3]  Alma Navarrete and Derek Jeffery were both named defendants in this action, but plaintiff
voluntarily dismissed them pursuant to Federal Rule of Civil Procedure 41(a)(1) on November

28  17, 2017.  (Doc. No. 26.)

2

"very inappropriate" and questioned Ms. Navarrete about how he could be elevated to a management position.[4]  (JUF ¶¶ 11, 12.)  On December 26, 2016, plaintiff told Ms. Navarrete about Mendoza's allegedly harassing conduct directed towards her.[5]  (JUF ¶ 13.)  In or about the first week of January 2017, Ms. Navarrete brought plaintiff's allegations of sexual harassment to Mr. Jeffery's attention and told him about plaintiff's complaints of harassment by Mendoza. (JUF ¶ 14.)

On January 24, 2017, Nexstar granted plaintiff's request to take a medical leave of absence through April 23, 2017, as specified in her doctor's note.  (JUF ¶ 15.)  On March 28, 2017, while plaintiff was on leave, her counsel sent a letter to Nexstar detailing her specific allegations of harassment against Mendoza and outlining her "claims for sexual harassment, gender discrimination, violation of public policy, and intentional infliction of emotional distress." (JUF ¶ 16; Doc. No. 100-4 at 10.)

On April 5, 2017, Nexstar suspended Mendoza's employment indefinitely, pending investigation, and reminded Mendoza of Nexstar's policy against retaliation in the notice of suspension.  (JUF ¶ 17.)  The next day, on April 6, 2017, Nexstar's counsel sent a letter to plaintiff's counsel informing plaintiff that Nexstar had "taken steps to avoid further contact between Mr. Mendoza and [plaintiff]," that Nexstar was conducting a thorough investigation and asking plaintiff to cooperate with its investigation.  (NUF ¶ 18; Doc. No. 100-4 at 18.)

On April 10, 2017, Nexstar engaged EXTII Inc., a company that provides workplace investigation services, to investigate the assertions plaintiff had made in her March 28, 2017 letter and to make factual determinations after its investigation.  (NUF ¶ 19.)  EXTII investigator

---

[4]  According to plaintiff, she made comments to Ms. Navarrete before and after Mendoza's promotion about Mendoza being inappropriate with her, including that Mendoza had told plaintiff "we should hook up," and that Mendoza had grabbed plaintiff's legs under the table at a charity event in September 2016.  (NUF ¶ 13.)

[5]  According to plaintiff, on December 26, 2016, she told Ms. Navarrete that:  (i) Mendoza told plaintiff "you really need to give me a blow job;" (ii) Mendoza rubbed his penis on plaintiff's arm; and (iii) while in plaintiff's office, Mendoza told her that he thinks of her all the time and showed her a video on his cell phone of him masturbating and ejaculating.  (NEF ¶ 13) (citing Doc. No. 108-6 at 79–80, 88–93 (plaintiff's deposition testimony)).

Allison Underwood interviewed plaintiff two or three times in connection with the investigation. (NUF ¶ 20.)

On April 17, 2017, six days before plaintiff was scheduled to return from her medical leave, plaintiff's counsel informed Nexstar in a letter addressed to Ms. Bush that plaintiff was "not in a position to return to work," that her "doctor will extend her medical leave," and that "she will forward said doctor's note to [Nexstar]." (NUF ¶ 21.) Plaintiff did not thereafter provide Nexstar with any doctor's note. (NUF ¶ 22.) Nevertheless, to secure plaintiff's return to work, Nexstar extended her leave (this time, without a predetermined end date). (NUF ¶ 23.) On May 11, 2017, Ms. Bush asked plaintiff whether she was ready to return to work, and plaintiff informed Ms. Bush that she would not return to work if Mendoza was present in the workplace. (NUF ¶ 24.) Accordingly, Nexstar further extended plaintiff's leave pending the investigation into her complaints against Mendoza. (*Id.*)

On June 2, 2017, Nexstar terminated Mendoza's employment after concluding that he had violated Nexstar's harassment policy.[6] (JUF ¶ 18.) That same day, Ms. Bush informed plaintiff that Nexstar had terminated Mendoza's employment and invited plaintiff to return to work. (NUF ¶ 25.) Plaintiff told Ms. Bush that she would think about it and respond the following week. (*Id.*) Accordingly, Nexstar further extended plaintiff's leave to allow her time to "think about it." (NUF ¶ 25.)

Having not received a response from plaintiff, Ms. Bush emailed plaintiff on June 8, 2017 to inquire whether plaintiff had any update regarding her return to work. (NUF ¶ 26.) Plaintiff did not respond to Ms. Bush's email. (*Id.*) Nevertheless, Nexstar again extended plaintiff's leave pending a response from plaintiff. (*Id.*)

/////

---

[6] Though plaintiff disputes the quality and thoroughness of EXTII's investigation, plaintiff does not meaningfully dispute that on May 24, 2017, EXTII provided its conclusions of the investigation orally to Nexstar. (NUF ¶ 28.) EXTII had concluded that plaintiff and Mendoza made joking and inappropriate comments to one another from around 2013 to 2015 and periodically in 2016 until Mendoza's promotion, and that there was no inappropriate touching or sharing of videos or photos. (*Id.*) However, EXTII also concluded that Mendoza's verbal comments violated Nexstar's harassment policies. (NUF ¶ 50.)

Having still not received a response from plaintiff, Ms. Bush sent a letter to plaintiff on June 20, 2017, reiterating that plaintiff was welcome to return to her position at Nexstar and that Nexstar remained willing to discuss any further accommodations she may need.  (NUF ¶ 27.)  In that letter, Ms. Bush also requested that plaintiff contact her by June 26, 2017 to discuss her return to work, otherwise Nexstar would assume that plaintiff was not interested in returning and was electing to resign.  (*Id.*)  Accordingly, Nexstar extended plaintiff's leave to June 26, 2017 to permit plaintiff the opportunity to advise her employer whether she intended to return to work. (*Id.*)

On June 26, 2017, plaintiff's counsel sent Ms. Bush a letter informing Nexstar that plaintiff "will be able to return to work on July 26, 2017," without stating any reason for the delayed return date.  (NUF ¶ 30; Doc. No. 100-4 at 33–34.)  In that letter, plaintiff's counsel also stated that plaintiff "is very eager to return to work," and that she "expects assurances that Mr. Jeffery, Ms. Navarrete, and all other upper management members have a full understanding of [Nexstar's] anti-retaliation policy before [plaintiff] returns to work under their supervision."  (*Id.*) In addition, following up on Ms. Bush's indication to plaintiff that there was an opportunity for her to apply for the Local Sales Manager position that was previously held by Mendoza, plaintiff's counsel informed Ms. Bush that plaintiff would like to apply for that position and asked for more information about how that process would work and with whom plaintiff would interview.  (Doc. No. 100-4 at 33; *see also* JUF ¶ 19.)

On June 28, 2017, Nexstar responded to plaintiff's letter, reiterating that plaintiff was "welcome to return to her original position at Nexstar, on a full-time, regular basis, with no loss of pay, benefits, and no change in job responsibilities," that "Mr. Mendoza is no longer employed," that "[a]ll KGET managers, including Derek Jeffery and Alma Navarrete, have been reminded of Nexstar's policy against retaliation," and that "Nexstar remains willing to engage in the interactive process to discuss any further accommodations plaintiff may require to return to work."  (NUF ¶ 31; Doc. No. 100-4 at 38.)  Nexstar also required that plaintiff report to work on July 5, 2017, noting that plaintiff had not provided any explanation for why she needed additional time off to July 26, 2017.  (*Id.*)  Nexstar also informed plaintiff that she could apply for the open

1    Local Sales Manager position online and provided the link for her to do so.  (NUF ¶ 32.)

2    However, plaintiff did not apply for the Local Sales Manager position.  (JUF ¶ 20; NUF ¶ 33.)

3              On June 30, 2017, plaintiff's counsel responded to Nexstar's letter and reiterated that

4    plaintiff was eager to return to work, but that she "recently received eye surgery on June 27,

5    2017, which requires at least two to six weeks to recover," and her "vision is impaired and she

6    continues to experience swelling and bruising to her face."  (NUF ¶ 34; Doc. No. 100-4 at 40.)

7    Plaintiff's counsel further explained that plaintiff "is doing everything within her control to

8    advance her recovery to allow her eye surgeon to clear her to return to work," and thus plaintiff

9    requested that she return to work on July 26, 2017.  (NUF ¶ 34; Doc. No. 100-4 at 41.)  Given this

10   explanation, Nexstar further extended plaintiff's leave through July 25, 2017, with a return to

11   work date of July 26, 2017.  (NUF ¶ 34.)

12             On July 21, 2017, five days before plaintiff's expected return date, plaintiff requested yet

13   another extension of her return date to August 23, 2017, without explanation, and provided a

14   doctor's note dated July 21, 2017, in which plaintiff's doctor requested plaintiff be excused from

15   work from July 6, 2017 through August 23, 2017.  (JUF ¶ 21; NUF ¶ 35; Doc. No. 100-4 at 43.)

16   Nexstar did not grant plaintiff's requested extension because plaintiff had already been on leave

17   for half a year, since January 2017.  (*Id.*)  Plaintiff did not return to work on July 26, 2017.  (JUF

18   ¶ 22.)

19             Nexstar terminated plaintiff's employment on or around July 26, 2017.  (JUF ¶ 23.)  The

20   decision to terminate plaintiff's employment was made by Nexstar's President Tim Busch,

21   Nexstar's Executive Vice President Brian Jones, and Ms. Bush.  (NUF ¶ 38.)  Ms. Navarrete and

22   Mr. Jeffery were not decision makers in Nexstar's determination to terminate plaintiff's

23   employment.  (NUF ¶¶ 39, 40.)  According to Nexstar, plaintiff's employment was terminated

24   because she did not return to work after her leave of absence had expired.  (NUF ¶ 37.)

25   According to plaintiff, her leave of absence did not end until nearly two years later, at the end of

26   /////

27   /////

28   /////

6

1 July 2019.[7]  (*Id.*)

2       Plaintiff initiated this lawsuit on September 22, 2017.  (Doc. No. 1.)  During discovery,

3 defendants served plaintiff with an interrogatory asking her to disclose her efforts to find

4 comparable employment since her termination from Nexstar.  (NUF ¶ 53.)  On May 17, 2018,

5 plaintiff responded that she was "self-employed," that she had applied for jobs with three

6 employers, and that she was pursuing employment opportunities from her previous clients.  (*Id.*)

7 Specifically, plaintiff had considered three jobs:  a director of marketing position with Char Tec, a

8 marketing position for Bland Solar & Air Showroom, and potential employment with Beverly

9 Hills Orthodontics.  (NUF ¶ 79.)  Plaintiff withdrew from being considered for employment with

10 Char Tec after she was interviewed because, as she testified at her deposition, "[i]t wasn't the

11 right time for [her] to take that on," and "that wasn't going to be the job for [her] right now."

12 (NUF ¶ 80.)  Plaintiff also testified at deposition that even if she was offered employment with

13 Beverly Hills Orthodontics, she would not have accepted the job offer because she was not ready

14 to work.  (NUF ¶ 81.)  Similarly, when some of plaintiff's former clients called her regarding

15 potential employment opportunities, she told them she would let them know because she was not

16 ready to work.  (NUF ¶ 82.)  Plaintiff's economic expert testified at his deposition that he did not

17 reach an opinion as to the reasonableness of plaintiff's job search, but he did opine that

18 replacement employment is available and that a reasonable job search would take approximately

19 twenty weeks.  (NUF ¶¶ 83–84.)  When the parties filed their joint statement of undisputed facts

20 on June 21, 2019, plaintiff stated that she was unemployed and that she had not worked for any

21 other employer since her leave of absence from Nexstar began on January 24, 2017.  (JUF ¶¶ 24,

22 25.)  Thereafter, plaintiff filed a declaration dated September 3, 2019 in support of her opposition

23 to the pending motions, in which plaintiff avers that "following [her] release to return back to the

24 workforce, [she] beg[a]n work as a sales consultant for Three Way Chevrolet," one of Nexstar's

25 clients.  (Doc. No. 108-4 at ¶ 3.)

26

27     [7]  Though plaintiff refers to three separate dates in her opposition and declaration as the end of
her leave of absence, plaintiff's counsel clarified at the hearing on the pending motions that she
28 contends that she remained on leave through the end of July 2019.  (Doc. No. 116 at 22.)

1      During discovery in this action, around July 2, 2018, plaintiff produced more than two

2  dozen text messages exchanged between herself and Ms. Navarrete over approximately a one-

3  year span, reflecting that they engaged in banter about personal issues, including sex.[8]  (NUF ¶¶

4  53, 54.)  On August 1, 2018, Nexstar terminated Ms. Navarrete's employment for engaging in

5  improper communications with plaintiff, which according to Nexstar, violated Nexstar's anti-

6  harassment and code of conduct policies.[9]  (NUF ¶ 58.)  According to Nexstar, due to the nature

7  of the text messages, Nexstar would have terminated plaintiff's employment on August 1, 2018 as

8  well, if plaintiff had been employed at that time.  (NUF ¶ 59.)

9      In January 2019, Nexstar's counsel conducted a forensic examination of plaintiff's mobile

10  phone, which she used to communicate with Nexstar employees while she was employed, and

11  from that examination, Nexstar learned on January 24, 2019 that plaintiff had sent sexually

12  _____

13  [8]  For example, in one exchange, plaintiff asked Ms. Navarrete what she was doing, and Ms.
    Navarrete jokingly responded that she was "having sex."  (NUF ¶ 54.)  Ms. Navarrete also sent
14  plaintiff a photo of an erect penis, and when plaintiff told Ms. Navarrete that she needed a dildo,
    plaintiff sent a photo of a dildo.  (*Id.*)  Plaintiff and Ms. Navarrete also talked unfavorably
15  towards other women, calling them names such as "whore" and "bitch."  (*Id.*)  Plaintiff also sent
    text messages to Ms. Navarrete in which plaintiff called another Nexstar account executive,
16  Alyssa Duran, a "bitch," "a fat ass bitch," and referred to her as "dirty."  (NUF ¶¶ 55–57.)

17  [9]  Plaintiff received Nexstar's employee guidebook and acknowledged her receipt of same, which
18  included Nexstar's prohibition on discrimination and harassment in the workplace.  (NUF ¶¶ 42,
    43.)  Nexstar's harassment policy states in relevant part:
19
20          Sexual harassment is strictly prohibited.  Examples of prohibited
            behavior include unwelcome sexual advances, requests for sexual
21          favors, obscene gestures, displaying sexually graphic magazines,
            calendars or posters, sending sexually explicit e-mail or voice-mail,
22          and other verbal or physical conduct of a sexual nature, such as
            uninvited touching of a sexual nature or sexually related comments.
23          Depending upon the circumstances, the conduct can also include
            sexual joking, vulgar or offensive conversation or jokes,
24          commenting about an employee's physical appearance,
            conversation about your own or some[one] else's sex life, and
25          teasing or other conduct directed toward a person because of his or
            her gender.
                                    . . .
26          Any employee who engages in prohibited conduct which falls
            within the parameters of this policy will be subject to appropriate
27          disciplinary action up to and including termination.

28  (NUF ¶ 59; Doc. No. 102-4 at 13, 26–27.)

explicit texts and images to Ms. Navarrete during their employment—messages that plaintiff had not produced in discovery.[10]  (NUF ¶¶ 60–61.)  According to Nexstar, it would have terminated plaintiff's employment on January 24, 2019, had plaintiff been employed at that time, because her text messages with Ms. Navarrete violated Nexstar's anti-harassment and code of conduct policies.  (NUF ¶ 69.)

On March 4, 2019, Nexstar obtained additional sexually explicit texts and images from Ms. Navarrete that plaintiff had sent to her during their employment, and which had not been previously uncovered by forensic examination.  (NUF ¶¶ 70, 71.)  These additional messages included photos of plaintiff engaging in sexual intercourse, a photo of plaintiff performing oral sex on an unidentified male, a photo showing a male licking plaintiff's bare breast, and a photo showing a male's penis next to female genitalia during intercourse.  (NUF ¶¶ 71–72.)  Again, according to Nexstar, these text messages are deemed a violation of its anti-harassment and code of conduct policies and if plaintiff had been employed at that time, her employment would have been terminated on March 4, 2019 or shortly thereafter.  (NUF ¶ 73.)

Plaintiff disputes that her text messages with Ms. Navarrete violated Nexstar's policies and contests Nexstar's assertion that it would have terminated her employment on any of the dates that Nexstar learned of those messages—August 1, 2018, January 24, 2019, or March 4, 2019.  (*Id.*)  According to plaintiff, she at one time was a very close friend of Ms. Navarrete and as such, they would discuss all manner of private and intimate details of their lives, including plaintiff's dating life, as well as sexual and profane jokes, conversations, and pictures.  (*Id.*)  In addition, plaintiff states that the racy and sexual text messages were exchanged after hours, were not part of the workplace environment, and were not unwelcome.  (*Id.*)  Plaintiff characterizes the

---

[10]  For example, plaintiff sent text messages to Ms. Navarrete with a photo of a couple engaging in sexual intercourse, a photo of a man with an exposed penis, and photos from a bachelorette party of men and women in sexually explicit positions.  (NUF ¶¶ 62–64.)  Plaintiff also sent the following text messages to Ms. Navarrete:  (i) "I need Sex LOL.  Can you fix that?"; (ii) "Damn I need sex !!! LOL"; and (iii) "I need sex so bad.  This is what I don't like about being single! LOL.  I've used out my batteries in like three days!  LOL.  Hahaha."  (NUF ¶¶ 65–67.)  Plaintiff then sent a text message to Ms. Navarrete with a meme of a remote control and a vibrator.  (NUF ¶ 68.)

1  text messages as out-of-the-office-banter between two good friends.  (*Id.*)

2  **B.    Procedural Background**

3  On November 10, 2017, plaintiff filed the operative first amended complaint ("FAC") in

4  this action, in which she asserts the following claims:  (1) sexual harassment in violation of the

5  Fair Employment and Housing Act ("FEHA"), California Government Code §§ 12900 *et seq*.,

6  against defendants; (2) gender discrimination in violation of FEHA against defendant Nexstar; (3)

7  wrongful termination in violation of public policy against defendant Nexstar; (4) retaliation in

8  violation of FEHA against defendant Nexstar; and (5) intentional infliction of emotional distress

9  against all defendants.  (Doc. No. 14.)[11]

10  On June 21, 2019, defendant Nexstar filed its motion for partial summary judgment on

11  plaintiff's claims for gender discrimination, retaliation, wrongful termination, and intentional

12  infliction of emotional distress, and in the alternative, for partial summary judgment on

13  defendants' affirmative defenses to limit plaintiff's economic damages under the after-acquired

14  evidence doctrine and due to her failure to mitigate by seeking replacement employment.  (Doc.

15  Nos. 100, 100-1.)  That same day, defendant Mendoza similarly moved for partial summary

16  judgment on those same affirmative defenses.  (Doc. Nos. 102, 102-1.)

17  On September 3, 2019, plaintiff filed a joint opposition to the pending motions for

18  summary judgment.  (Doc. No. 108.)  On September 10, 2019, defendants filed their replies to

19  plaintiff's opposition.  (Doc. Nos. 110, 111.)[12]  Defendants also filed objections to certain

20  evidence that plaintiff submitted in support of her opposition to the pending motions.  (Doc. Nos.

21  110-1, 111-1.)

22

23  [11]  On September 22, 2017, plaintiff initiated this action by filing her original complaint in Los
24  Angeles County Superior Court, which Nexstar removed to the U.S. District Court for the Central
District of California on October 31, 2017.  (Doc. No. 1.)  This action was then transferred to this
25  district on January 2, 2018 pursuant to 28 U.S.C. § 1404(a).  (Doc. No. 46.)

26  [12]  Defendant Nexstar also requests in its reply that the separate statement of undisputed material
facts that plaintiff filed concurrently with her opposition to the pending motions (Doc. No. 108-3)
27  be stricken because, according to defendant Nexstar, the Local Rules do not permit plaintiff to file
such a statement.  (Doc. No. 110 at 9.)  Because the court has not considered plaintiff's separate
28  statement, defendant Nexstar's request to strike plaintiff's statement is denied as moot.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, as plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or

11

admissible discovery material in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party, *see Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party."  *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

## DISCUSSION

### A.    Defendants' Objections to Plaintiff's Evidence

Defendants have filed objections to certain evidence submitted by plaintiff in support of her opposition to their pending motions for partial summary judgment.  (Doc. Nos. 110-1; 111-1.)

12

1    First, defendants object to the entire declaration of Alyssa Duran as inadmissible because

2    it is not dated, and as the magistrate judge found, Ms. Duran has repeatedly evaded service of

3    process and refused to appear for a deposition even after being successfully served with the

4    deposition subpoena.  (Doc Nos. 110-1 at 2; 111-1 at 2–3) (citing 28 U.S.C. § 1746 (requiring a

5    declaration to be made "in writing of such person which is subscribed by him as true and under

6    penalty of perjury, and dated"); *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI-JLT, 2011

7    WL 6153212, at *8 (E.D. Cal. Dec. 12, 2011) (striking undated declarations filed in support of an

8    opposition to class certification)).  At the hearing on the pending motions, the court expressed

9    skepticism that the Duran declaration could or should be considered under these circumstances,

10   and plaintiff's counsel responded only by contending that Ms. Duran still might be deposed prior

11   to the trial of this action, in which case she would be permitted to testify at trial.  (Doc. No.116 at

12   13–14.)  In the court's view, the mere possibility that Ms. Duran might sit for a deposition before

13   trial is not sufficient to justify this court's consideration of her declaration as evidence on

14   summary judgment.  Moreover, plaintiff's counsel did not address the simple fact that Ms.

15   Duran's declaration is not dated, and on that basis alone, is inadmissible.  *See Walton v. Van Ru*

16   *Credit Corp.*, No. 10-cv-344, 2011 WL 6016232, at *6 (N.D. Ill. Dec. 2, 2011) (recognizing "that

17   unsworn declarations may be admissible pursuant to 28 U.S.C. § 1746," but "the absence of a

18   signature or specific date easily proves to be the death knell of these submissions").  Thus,

19   defendants' objection to the Duran declaration is sustained.

20   Second, defendants object to lines 11–12 in paragraph 2 of plaintiff's own declaration

21   dated September 3, 2019, in which plaintiff states:  "I remained on a leave of absence due to the

22   conduct of Defendants until the end of July 2019."  (Doc. Nos. 110-1 at 2; 111-1 at 4.)  For

23   context, paragraph 2 in its entirety states:

24            Due to the sexual harassment that I endured from Erik Mendoza
              both before and after he became my supervisor (when he was
25            promoted to the position of Local Sales Manager ("LSM") in or
              about July 2016), my doctor, Dr. Rocky Chavez of Premier Family
26            Health Care, placed me on a leave of absence on or about January
              24, 2017.  I remained on a leave of absence due to the conduct of
27            Defendants until the end of July 2019.

28   (Doc. No. 108-4 at 2.)  Defendants object on the grounds that plaintiff's assertion that she

13

1   remained on leave until the end of July 2019 lacks foundation, violates the best evidence rule,

2   calls for expert testimony, and constitutes hearsay.  (Doc. Nos. 110-1 at 2; 111-1 at 4.)

3   Defendants point to the lack of any document or deposition testimony to support plaintiff's

4   statement in this regard; plaintiff does not attach to her declaration any doctor's note or any other

5   document evidencing that her doctor had continued her leave of absence through the end of July

6   2019.  (*Id.*)  To the extent plaintiff's assertion is intended to refer to a statement made by Dr.

7   Chavez related to the length and reason for her leave of absence, defendants contend that such a

8   statement would be inadmissible as hearsay.  (*Id.*)  In addition, defendants contend that Dr.

9   Chavez's testimony would not be admissible because plaintiff did not disclose Dr. Chavez as

10  either a witness or an expert witness in this case, and plaintiff did not identify Dr. Chavez in her

11  initial disclosures or in her responses to defendants' interrogatories.  (*Id.*)

12         With regard to documentary substantiation of plaintiff's leave dates, plaintiff's counsel

13  asserted at the hearing on the pending motions that "defendants subpoenaed the records of the

14  doctors, so they've got most of those records," and represented that plaintiff had "produced

15  additional records after the discovery cut off which had those things in there as well."  (Doc. No.

16  116 at 23.)  But plaintiff's counsel stopped short of directing the court to any particular document

17  or record to substantiate her assertion that her leave of absence continued through the end of July

18  2019.  With regard to deposition testimony, plaintiff's counsel asserted that defendants' counsel

19  never asked plaintiff whether she was still on leave; the question simply was not asked.  (*Id.*)

20         Ultimately, defendants' objections to lines 11–12 of paragraph 2 of plaintiff's declaration

21  pertain to the admissibility, credibility, and weight of plaintiff's statement that she remained on

22  leave until the end of July 2019.  But none of those determinations are made by the court at the

23  summary judgment stage.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) ("At

24  the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We

25  instead focus on the admissibility of its contents.") (citing *Block v. City of Los Angeles*, 253 F.3d

26  410, 418–19 (9th Cir. 2001); *see also T.W. Elec. Serv., Inc.*, 809 F.2d at 630 ("[A]t this [summary

27  judgment] stage of the litigation, the judge does not weigh conflicting evidence with respect to a

28  disputed material fact.  Nor does the judge make credibility determinations with respect to

14

1  statements made in affidavits, answers to interrogatories, admissions, or depositions.").

2  Defendants' objection that plaintiff fails to substantiate her statement with documentation or

3  deposition testimony goes to the weight to be given to plaintiff's statement, not whether the

4  contents of the statement would be admissible at trial.  Defendants have not persuaded the court

5  that plaintiff's statement lacks foundation and would therefore be inadmissible at trial; arguably,

6  plaintiff has personal knowledge of when her leave ended and could testify at trial as to that issue.

7      Accordingly, defendants' objection to lines 11–12 of paragraph 2 of plaintiff's declaration

8  is overruled for purposes of considering the pending motions.[13]

9  **B.    Defendant Nexstar's Motion for Summary Judgment on Plaintiff's Claims**

10      1.    FEHA Gender Discrimination Claim

11      Under FEHA, it is unlawful for an employer "to bar or to discharge [a] person from

12  employment" or "to discriminate against [a] person in compensation or in terms, conditions, or

13  privileges of employment" because of that person's "sex, gender, gender identity, or gender

14  expression."  Cal. Gov't. Code § 12940(a).

15      In reviewing employees' claims that employers have engaged in discrimination in

16  violation of FEHA, California courts rely on the three-part burden-shifting framework enunciated

17  by the Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).  *Diyorio v.*

18  *AT&T*, 242 F. App'x 450, 452 (9th Cir. 2007)[14]; *Clasen v. Skywest Airlines, Inc.*, No. 19-cv-460-

19  DMG-KKX, 2020 WL 7224246, at *5 (C.D. Cal. Nov. 19, 2020) (citing *Guz v. Bechtel Nat'l,*

20  *Inc.*, 24 Cal. 4th 317, 354 (2000)).  Under that framework, the plaintiff must first establish a

21  *prima facie* case of discrimination by showing that:  (1) she belongs to a protected class; (2) she

22  was performing competently in the position she held; (3) she suffered an adverse employment

23

24  [13]  Defendant Mendoza also objects to plaintiff's statements set forth at paragraphs 7 and 8 of her
    declaration that her text messages with Ms. Navarrete did not involve use of Nexstar's computers
25  and were not unwelcome.  (Doc. No. 111-1 at 4–5.)  Defendant Mendoza's objections to these
    statements are not addressed in this order because the court does not rely on the challenged
26  evidence in resolving the pending motions.

27
28  [14]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
    36-3(b).

15

1   action, such as termination; and (4) some other circumstance suggests that the employer acted

2   with a discriminatory motive.  *Guz*, 24 Cal. 4th at 355; *Perez v. Alameda Cty. Sheriffs' Office*,

3   No. 10-cv-04181-JSW, 2014 WL 12668404, at *4–5 (N.D. Cal. Dec. 3, 2014) *aff'd*, 678 F. App'x

4   621, 621–22 (9th Cir. 2017).  "While the plaintiff's *prima facie* burden is not onerous, [plaintiff]

5   must at least show actions taken by the employer from which one can infer, if such actions remain

6   unexplained, that it is more likely than not that such actions were based on a prohibited

7   discriminatory criterion."  *Guz*, 24 Cal. 4th at 355 (internal quotations and citations omitted).  "If

8   the plaintiff does so, a rebuttable presumption of discrimination arises, which shifts the burden to

9   the employer to show that the adverse employment action was taken for a legitimate,

10  nondiscriminatory reason."  *Clasen*, 24 Cal. 4th at 355.  "If the employer succeeds, the burden

11  shifts back to the plaintiff to show that the employer's proffered reasons were pretext for

12  discriminatory motive."  *Id.*

13
14          A plaintiff may establish pretext either directly by persuading the
            court that a discriminatory reason more likely motivated the
            employer or indirectly by showing that the employer's proffered
15          explanation is unworthy of credence.   If a plaintiff uses
            circumstantial evidence to satisfy this burden, such evidence "must
16          be specific" and "substantial."

17  *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011) (internal

18  citations and quotation marks omitted).

19          California courts have also noted that because the *McDonnell Douglas* test was "originally

20  developed for use at trial, not in summary judgment proceedings," the burden is reversed when

21  the defendant moves for summary judgment.  *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327,

22  343–44 (2008).  In moving for summary judgment, a defendant therefore must satisfy an initial

23  burden of proving that the plaintiff's "cause of action has no merit by showing either that one or

24  more elements of the prima facie case 'is lacking, or that the adverse employment action was

25  based on legitimate nondiscriminatory factors."  *Husman v. Toyota Motor Credit Corp*., 12 Cal.

26  App. 5th 1168, 1181 (2017) (quoting *Cucuzza v. City of Santa Clara,* 104 Cal. App. 4th 1031,

27  1038 (2002).  "[T]o survive summary judgment, the plaintiff can offer evidence either that the

28  employer was motivated by discrimination, or that the employer's stated reasons were not its true

16

1    reasons or motivation for the adverse action."  *Diyorio*, 242 F. App'x at 452.

2          Here, defendant Nexstar moves for summary judgment in its favor on plaintiff's gender

3    discrimination claim because "Nexstar terminated plaintiff's employment for the legitimate,

4    nondiscriminatory reason that she did not return to work from leave on her return date of July

5    26," and plaintiff has not established that Nexstar's reason was pretext for gender discrimination.

6    (Doc. No. 100-1 at 17.)[15]  Nexstar contends that if it "desired to terminate plaintiff's employment

7    for the pretextual reason that she is female, it would not have granted seven extensions of her

8    leave of absence."  (*Id.*)  Nexstar also emphasizes that it denied plaintiff's eighth request for an

9    extension of her leave, which she requested shortly before her return date, because she had

10   already been on leave for half a year—not because of her gender.  (*Id.*)  Moreover, according to

11   Nexstar, plaintiff has not submitted any evidence that the reason for her termination was a pretext

12   for gender discrimination.  (*Id.*)

13         In her opposition to the pending motions, plaintiff asserts that "there is a wealth of

14   pretext" but points to evidence of only two circumstances in support of that conclusory argument:

15   (1) that Nexstar replaced plaintiff with Mr. Carbajal, and (2) that during the investigation into

16   plaintiff's complaints against Mendoza, Mr. Jeffery allegedly made sexist and chauvinistic

17   remarks to the investigator, which were included in the investigator's report.  (Doc. No. 108 at

18   19.)  For the reasons that follow, the court finds that these circumstances do not constitute

19   specific and substantial evidence of pretext on the part of Nexstar.

20         First, as to Nexstar's decision to replace plaintiff with Mr. Carbajal, plaintiff has not

21   articulated how this decision evidences pretext for gender discrimination.  Plaintiff merely asserts

22   the fact that plaintiff was replaced by Mr. Carbajal—presumably because he is a man, though

23   plaintiff does not say—without making any argument in this regard.

24         Second, plaintiff has not shown that Mr. Jeffery's comments evidence a discriminatory

25   motive by Nexstar, either directly, or indirectly when viewed with the totality of the evidence

26   before the court on summary judgment.  According to plaintiff's characterization of Mr. Jeffery's

27   ───────────────

28   [15]  Defendant Nexstar assumes for the purpose of its motion that plaintiff can establish a *prima facie* case of gender discrimination.  (Doc. No. 100-1 at 17.)

1    deposition testimony, Jeffery had commented to the investigator that "he was afraid to be alone in

2    the same room with [plaintiff] because she might become 'sexually aggressive' towards him; that

3    she sold by being 'sexually aggressive'; that he was sympathetic towards Mendoza because he

4    'reacted' to whatever [plaintiff] had put out; she was a serial dater; and was a 'bad person'

5    because Mendoza got fired."  (*Id.*)  The court notes, however, that these characterizations are not

6    entirely supported by the evidence before the court on summary judgment.  For example, Mr.

7    Jeffery's comment that plaintiff was a "bad person" was made in an email dated July 27, 2017—

8    two months *after* the investigation concluded and the day *after* plaintiff's termination.  (*See* Doc.

9    No. 114 at 8; JUF ¶ 23.)  In addition, Mr. Jeffery did not testify at his deposition that he was

10   afraid to be alone in the same room with plaintiff *in particular* out of fear that she would become

11   sexually aggressive, but rather that "[a]nybody that is in a closed-door meeting or with me,

12   there's always a concern with that," and his concern was not specific to plaintiff, as "it's an

13   absolute policy of [his]" and "[c]losed door meetings and conversations should not take place, if

14   avoidable."  (Doc. No. 108-6 at 161–162, 166–167.)  Nevertheless, even assuming Mr. Jeffery

15   made the comments as plaintiff has characterized them, such comments are neither direct

16   evidence of discrimination nor specific and substantial evidence of pretext on the part of Nexstar.

17          Notably, it is undisputed that Mr. Jeffery did not participate in the decision to terminate

18   plaintiff's employment.  Indeed, plaintiff does not argue or present any evidence to show that Mr.

19   Jeffery's allegedly chauvinistic comments had contributed to Nexstar's decision to terminate

20   plaintiff's employment—a decision undisputedly made by Terri Bush, Tim Busch, and Brian

21   Jones in Nexstar's headquarters in Texas.  Moreover, because Mr. Jeffery's comments are stray

22   remarks by a non-decisionmaker, they do not constitute direct evidence of gender discrimination.

23   *See Dixon v. XPO Logistics, LLC*, No. 3:18-cv-2743-L-MDD, 2020 WL 7024639, at *4 (S.D.

24   Cal. Nov. 30, 2020) (citing *Reid v. Google*, 50 Cal. 4th 512, 541–542 (2010)).  Although "under

25   federal antidiscrimination law, such remarks are largely deemed irrelevant, and their assertion is

26   insufficient to withstand summary judgment," California courts take a "totality of the

27   circumstances" approach when evaluating FEHA claims and consider such "stray remarks along

28   with all of the other evidence in the record to determine whether the remarks 'create an ensemble

18

1    that is sufficient to defeat summary judgment.'"   *Korte v. Dollar Tree Stores, Inc.*, No. 12-cv-

2    541-LKK, 2013 WL 2604472, at *13 (E.D. Cal. June 11, 2013) (citing *Reid*, 50 Cal. 4th at 539).

3    Mr. Jeffery's comments create no such ensemble here.

4         Viewing the totality of the evidence before the court on summary judgment, including

5    Nexstar's ample evidence substantiating its legitimate and nondiscriminatory reason for

6    terminating plaintiff's employment, plaintiff has not shown pretext.  At the hearing on the

7    pending motions, plaintiff's counsel was unable to point to any specific and substantial evidence

8    that Nexstar's reason for terminating plaintiff's employment was pretext for gender

9    discrimination.  (Doc. No. 116 at 6.)  Plaintiff has simply not provided any evidence suggesting

10   that a discriminatory reason more likely motivated Nexstar in deciding to terminate her

11   employment.  By contrast, Nexstar has come forward on summary judgment with copies of Ms.

12   Bush's several correspondences with plaintiff and her counsel, which shows Nexstar's continued

13   efforts to confirm plaintiff's return date and its granting of plaintiff's several leave of absence

14   extension requests, and shows plaintiff's confirmations that she was eager to and would return to

15   work—all facts that are undisputed.  In addition, it is undisputed that while plaintiff was on

16   extended leave from work, Nexstar informed plaintiff that Mendoza's employment had been

17   terminated and that she may apply for his former position.  (NUF ¶ 32.)  These facts belie

18   plaintiff's unsupported assertion that Nexstar's reason for terminating her employment—that she

19   did not return to work on her return date—is pretext for gender discrimination.  Considering all of

20   the evidence before the court on summary judgment, the court finds that plaintiff's evidence of

21   Mr. Jeffery's comments, coupled with Nexstar's decision to replace plaintiff with Mr. Carbajal, is

22   insufficient to show that Nexstar was motivated by discrimination, or that Nexstar's stated

23   reasons were not its true reasons or motivation for her termination.  *See Diyorio*, 242 F. App'x at

24   452.

25        Plaintiff has also not argued or shown that Nexstar's explanation is unworthy of credence.

26   *Morgan v. Regents of the Univ. of Cal.,* 88 Cal. App. 4th 52, 75 (2000) (noting that to avoid

27   summary judgment, an employee "must demonstrate such weaknesses, implausibilities,

28   inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons

1    for its action that a reasonable factfinder could rationally find them unworthy of credence and

2    hence infer that the employer did not act for the asserted non-discriminatory reasons") (internal

3    quotations and citation omitted).

4          Because Nexstar has articulated legitimate nondiscriminatory reasons for terminating

5    plaintiff's employment, and plaintiff has failed to offer evidence of pretext, Nexstar is entitled to

6    summary judgment in its favor as to plaintiff's gender discrimination claim.  *See Perez v.*

7    *Alameda Cty. Sheriffs' Office*, 678 F. App'x 621, 621–22 (9th Cir. 2017)[16] (affirming summary

8    judgment for employer on employee's gender discrimination claim because she "failed to

9    establish an issue of material fact as to" her employer's articulated legitimate reason for

10   disciplining her, and none of the circumstantial evidence of discriminatory motive that she

11   presented established pretext, including evidence that other employees had made derogatory

12   remarks unrelated to the disciplinary action against her).

13         Accordingly, defendant Nexstar's motion for summary judgment on plaintiff's gender

14   discrimination claim under FEHA will be granted.

15         2.      Plaintiff's FEHA Retaliation Claim

16         California law prohibits retaliation by an employer against an employee.  Specifically,

17   FEHA makes it unlawful for "[f]or any employer . . . to discharge, expel, or otherwise

18   discriminate against any person because the person has opposed any practices forbidden under

19   this [Act] or because the person has filed a complaint, testified, or assisted in any proceeding

20   under this [Act]."  Cal. Gov't Code § 12940(h).  A *prima facie* case of retaliation under FEHA

21   requires a plaintiff to show:  (1) a protected activity; (2) an adverse employment action; and (3) a

22   causal link between the protected activity and the employer's action.  *Yanowitz v. L'Oreal USA,*

23   *Inc.*, 36 Cal. 4th 1028, 1042 (2005); *Light v. Cal. Dep't of Parks and Recreation*, 14 Cal. App.

24   5th 75, 91 (2017).

25         In considering FEHA retaliation claims, California courts apply the *McDonnell Douglas*

26   burden-shifting analysis.  *See Yanowitz*, 36 Cal. 4th at 1042.  As explained above, under that

27   _____

28   [16]  *See* footnote 14, above.

                                        20

analysis, once an employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to offer a legitimate, non-retaliatory reason for the adverse employment action. *Id.*; *Light*, 14 Cal. App. 5th at 91; *Flores v. City of Westminister*, 873 F.3d 739, 750 (9th Cir. 2017). If the employer produces a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the employee to prove intentional retaliation. *Id.*; *Yanowitz*, 36 Cal. 4th at 1042 ("If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture' . . ."). The plaintiff then has the burden to show "that the defendant's explanation is merely a pretext for impermissible retaliation." *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001).

"Pretext may be shown either (1) directly by persuading the jury that a discriminatory motive more likely than not motivated the employer or (2) indirectly by showing that the employer's proffered explanation is unworthy of credence." *Winarto*, 274 F.3d at 1284. Under Ninth Circuit precedent, "[c]ircumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Brown v. City of Tucson*, 336 F.3d 1181, 1188 (9th Cir. 2003); *Godwin v. Hunt Wesson Inc*., 150 F.3d 1217, 1220 (9th Cir. 1998) ("Where evidence of pretext is circumstantial, rather than direct, the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext."); *Gorrell v. Wells Fargo Bank, N.A.*, No. 14-cv-06811-AB (EX), 2015 WL 13721390, at *5 (C.D. Cal. June 25, 2015) (granting summary judgment for the defendant where the plaintiff produced "no evidence that Wells Fargo terminated her for reasons other than her lack of compliance with company policy," and finding that "[s]olely relying on her declaration as her basis for retaliation does not create a triable issue of pretext for a jury to decide"). "Unsubstantiated assertions of retaliatory intent, without more, are insufficient to overcome the [employer's] proffered neutral reasons." *Munoz v. Mabus*, 630 F.3d 856, 865 (9th Cir. 2010) (affirming the granting of summary judgment in favor of a defendant repair shop on a technician's retaliation claim because the technician's unsubstantiated allegations that the shop had retaliatory motives in denying his requests for specialized training were insufficient to overcome the shop's evidence of legitimate, non-retaliatory, and non-discriminatory reasons).

/////

1     Finally, it has been recognized that "[m]erely denying the credibility of the employer's proffered

2     reasons is insufficient to withstand summary judgment." *Id.*

3         Here, similar to plaintiff's gender discrimination claim, defendant Nexstar moves for

4     summary judgment on plaintiff's FEHA retaliation claim based on plaintiff's failure to show

5     specific and substantial evidence that Nexstar's reason for terminating her employment was

6     pretext for retaliation. (Doc. Nos. 100-1 at 18–19; 110 at 9–11.) Nexstar emphasizes that the

7     undisputed facts on summary judgment show that it went to great lengths to invite plaintiff to

8     return to work, repeatedly reminding her that she was welcome to return with no change in pay,

9     position, or benefits, and that Nexstar was willing to discuss any accommodations that plaintiff

10     may need to perform her job. (Doc. No. 100-1 at 19.) Nexstar argues that these efforts to secure

11     plaintiff's return to work—in particular, the undisputed fact that Nexstar granted plaintiff's

12     request for leave initially from January 24 to April 23 and then extended her leave *seven times*

13     upon plaintiff's requests—do not demonstrate any retaliatory intent on Nexstar's part in

14     ultimately denying plaintiff's eighth request and terminating her employment after she failed to

15     return to work. (*Id.*)

16         In her one-sentence opposition to Nexstar's motion for summary judgment with respect

17     to her retaliation claim, plaintiff fails to articulate a coherent argument as to how Nexstar's

18     actions constitute retaliation, let alone satisfy her burden of providing specific and substantial

19     evidence of pretext. (Doc. No. 108 at 19.) Indeed, plaintiff makes no effort to show a *prima*

20     *facie* case of retaliation. As to the first element, plaintiff has not articulated what protected

21     activity she engaged in, though presumably she would intend to show that her complaining to

22     Nexstar about Mendoza constitutes protected activity. As to the second element, the adverse

23     employment action is presumably her termination. Assuming those presumptions are correct, as

24     to the third element, plaintiff fails to articulate or show any causal link between her complaints

25     about Mendoza and her termination. Moreover, given the undisputed fact that Nexstar

26     responded to plaintiff's complaints about Mendoza by conducting an investigation and then

27     terminating his employment, and then subsequently invited plaintiff to apply for his former

28     position, the evidence before the court on summary judgment does not provide any support for

1  plaintiff's unsubstantiated claim of retaliation.

2  Because Nexstar has articulated legitimate nondiscriminatory reasons for terminating

3  plaintiff's employment, and plaintiff has failed to offer evidence that Nexstar's reason was

4  pretext for retaliation, Nexstar is also entitled to summary judgment in its favor as to plaintiff's

5  retaliation claim.

6  Accordingly, defendant Nexstar's motion for summary judgment with respect to

7  plaintiff's retaliation claim brought under FEHA will also be granted.

8      3.    <u>Plaintiff's Wrongful Termination Claim</u>

9  As a matter of California common law, "when an employer's discharge of an employee

10  violates fundamental principles of public policy, the discharged employee may maintain a tort

11  action and recover damages traditionally available in such actions." *Tameny v. Atl. Richfield Co.*,

12  27 Cal. 3d 167, 170 (1980). To prevail on a claim for wrongful discharge, a plaintiff must show

13  that: (1) an employer-employee relationship existed; (2) plaintiff's employment was terminated;

14  (3) the violation of public policy was a motivating factor for the termination; and (4) the

15  termination was the cause of plaintiff's damages. *Haney v. Aramark Unif. Servs., Inc.*, 121 Cal.

16  App. 4th 623, 641 (2004).

17  A violation of FEHA may support a claim for wrongful termination. *Hunter v.*

18  *Radioshack Corp.*, No. 1:10-cv-02297-AWI, 2012 WL 253204, at *9 (E.D. Cal. Jan. 25, 2012)

19  (citing *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1160–61 (1998)). Where a cause of

20  action for wrongful termination in violation of public policy is derivative of a FEHA claim, the

21  wrongful termination claim fails if the FEHA claim fails. *See Merrick v. Hilton Worldwide, Inc.*,

22  867 F.3d 1139, 1150 (9th Cir. 2017) ("Merrick's other claims are derivative of his FEHA age

23  discrimination claim, and so necessarily fail along with that claim.); *Diyorio*, 242 F. App'x at 452

24  (affirming summary judgment for an employer on an employee's wrongful termination claim,

25  which was premised on her allegations of age and gender discrimination, because the employee

26  had failed "to come forward with evidence that would allow a reasonable factfinder to find that

27  defendants discriminated against her," and thus her wrongful termination claim "also necessarily

28  fail[ed]"); *Castro*, 2020 WL 5756504 at *5 ("a cause of action for wrongful termination cannot be

1  maintained when it [is] based on the same conduct alleged in an unsupported FEHA claim");

2  *Bunio v. Victory Packaging, L.P.*, No. 2:18-cv-897-KJM-EFB, 2020 WL 5203446, at *5 (E.D.

3  Cal. Sept. 1, 2020), *report and recommendation adopted*, 2020 WL 6198589 (E.D. Cal. Oct. 22,

4  2020) (finding that the plaintiff failed "to meet his burden of showing that there is a genuine

5  dispute as to whether he was wrongfully terminated" because the plaintiff had not submitted any

6  evidence to survive summary judgment on his FEHA age discrimination claim); *Cf. Hunter*, 2012

7  WL 253204 at *9 (concluding that "because the Court has denied summary adjudication of the

8  age discrimination claim, summary adjudication must also be denied as to the cause of action

9  for wrongful termination"); *Mack v. Universal Truckload, LLC*, No. 5:19-cv-02363-RGK-SP,

10  2020 WL 8175602, at *7 (C.D. Cal. Dec. 18, 2020) (concluding that because the court had

11  already denied defendant's motion for summary judgment on plaintiff's FEHA discrimination

12  claim, denying summary judgment on plaintiff's derivative wrongful termination claim was

13  appropriate).

14      Here, because the court finds that defendant Nexstar is entitled to summary judgment in

15  its favor as to plaintiff's FEHA claims of gender discrimination and retaliation, plaintiff's

16  derivative wrongful termination claim also fails.  Accordingly, the court will grant defendant

17  Nexstar's motion for summary judgment as to plaintiff's wrongful termination claim as well.

18          4.      Plaintiff's Claim for Intentional Infliction of Emotional Distress

19      To prevail on a claim for intentional infliction of emotional distress ("IIED"), a plaintiff

20  must prove:  "(1) extreme and outrageous conduct by the defendant with the intention of causing,

21  or reckless disregard of the probability of causing, emotional distress; (2) the [plaintiff's]

22  suffering severe or extreme emotional distress; and (3) actual and proximate causation of the

23  emotional distress by the defendant's outrageous conduct."  *Davidson v. City of Westminster*, 32

24  Cal. 3d 197, 209 (1983) (citations omitted).

25      "Under California law, to make out a cause of action for intentional infliction of emotional

26  distress, a plaintiff must show, in relevant part, that the defendant engaged in extreme and

27  outrageous conduct that exceeded the bounds of what is generally tolerated in a civilized society."

28  *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1158 (9th Cir. 2000) (citing *Trerice*

1    *v. Blue Cross of Cal.,* 209 Cal. App. 3d 878, 883 (1989)).  While the outrageousness of a

2    defendant's conduct normally presents an issue of fact to be determined by the trier of fact, the

3    court may determine in the first instance, whether the defendant's conduct may reasonably be

4    regarded as so extreme and outrageous as to permit recovery.  *Trerice*, 209 Cal. App. 3d at 883–

5    85 (finding that the trial court did not abuse its discretion in granting summary judgment on an

6    employee's IIED claim where her employer's conduct in terminating her employment as part of a

7    reduction in its work force, although not exemplary, was not outrageous either) (internal citations

8    omitted); *see also London v. Sears, Roebuck & Co.*, 458 F. App'x 649, 651 (9th Cir. 2011)[17]

9    (finding that the district court correctly granted summary judgment on an employee's IIED claim

10   because her termination for violating her employer's well-established zero-tolerance discount

11   card policy was not "extreme and outrageous").

12           "Terminating an employee for improper or discriminatory reasons, like many other

13   adverse personnel management decisions, is insufficiently extreme or outrageous to give rise to a

14   claim for intentional infliction of emotional distress."  *Walker v. Boeing Corp.*, 218 F. Supp. 2d

15   1177, 1190 (C.D. Cal. 2002) (citing *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 61, 79–80

16   (1996)) ("To the extent that it is based upon his termination, Walker's claim for intentional

17   infliction of emotional distress must fail.")

18           Here, defendant Nexstar moves for summary judgment as to plaintiff's IIED claim,

19   arguing that even assuming Mendoza's conduct constitutes sexual harassment severe enough to

20   support plaintiff's IIED claim, Nexstar has no *respondeat superior* liability for Mendoza's

21   conduct.  (Doc. No. 100-1 at 20–21.)  First, Nexstar asserts that employers cannot be held

22   vicariously liable for alleged sexual misconduct committed by an employee and cites several

23   cases in support of its assertion.  (*Id.*)  Second, Nexstar argues that although "[a]n employer may

24   be liable for an employee's willful and malicious actions under principles of ratification," there is

25   no evidence that Nexstar ratified Mendoza's alleged misconduct in this case.  (*Id.*) (citing *Delfino

26   v. Agilent Techs.*, *Inc.*, 145 Cal. App. 4th 790, 811 (2006)).  To the contrary, there is no dispute

27   ────────────────────

28   [17]  *See* footnote 14.

1    that a week after Nexstar received plaintiff's March 28, 2017 letter detailing her complaints

2    against Mendoza, Nexstar suspended Mendoza's employment pending an investigation into

3    plaintiff's complaints, and then terminated his employment after the investigation concluded.

4    According to defendant Nexstar, its termination of Mendoza's employment negates a finding that

5    it ratified his allegedly harassing conduct.  (Doc. Nos. 100-1 at 21; 110 at 11.)

6         In her opposition, plaintiff counters that defendant Nexstar "ignores the wealth of

7    evidence that placed Nexstar on notice that Mendoza was a double offender," making his conduct

8    foreseeable, and yet Nexstar "did nothing" in response.  (Doc. No. 108 at 20.)  Plaintiff does not

9    clarify what she means by "double offender," though presumably she is referring to the

10   statements contained in the declaration of Ms. Duran, which the court has already determined to

11   be inadmissible for purposes of these summary judgment proceedings.

12        The court recognizes that "[r]atification may be inferred from the fact that the employer,

13   after being informed of the employee's actions, does not fully investigate and fails to repudiate

14   the employee's conduct by redressing the harm done and punishing or discharging the employee."

15   *Roberts v. Ford Aerospace & Commc'ns Corp.*, 224 Cal. App. 3d 793, 801 (1990).  "Retention of

16   an employee after knowledge of the employee's conduct or an adequate opportunity to learn of

17   the conduct may support an inference of ratification."  *Garcia ex rel. Marin v. Clovis Unified Sch.*

18   *Dist.*, No. 1:08-cv-1924-AWI-SMS, 2009 WL 2982900, at *15 (E.D. Cal. Sept. 14, 2009).

19        Here, however, plaintiff is not arguing that Nexstar "did nothing" in response to *her*

20   detailed complaints against Mendoza.  Indeed, the evidence before the court would not support

21   such an argument because the undisputed facts show that Nexstar promptly suspended Mendoza's

22   employment, investigated plaintiff's complaints against him, and then terminated his employment

23   as a result of that investigation.  Instead, plaintiff appears to argue that Nexstar "did nothing" in

24   response to a *different* employee's alleged complaints against Mendoza.  (Doc. No. 108 at 20.)

25   But plaintiff fails to substantiate this argument with any admissible evidence.  As noted above,

26   the court sustained defendants' objections to the declaration of Ms. Duran.  Despite plaintiff's

27   bold assertion that there is a "wealth of evidence," plaintiff has not tendered any admissible

28   evidence of specific facts in support of her contention that a genuine factual dispute exists

1   precluding summary judgment on her IIED claim.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475

2   U.S. at 586 n.11; *Orr*, 285 F.3d at 773.  While the court draws all inferences in favor of plaintiff,

3   as the non-moving party, it remains plaintiff's obligation to produce a factual predicate from

4   which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224,

5   1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Plaintiff has not done so

6   here.

7       Accordingly, defendant Nexstar's motion for summary judgment in its favor as to

8   plaintiff's IIED claim will also be granted.

9   **C.    Defendant Nexstar's Motion for Summary Judgment on Affirmative Defenses**

10      Defendant Nexstar also moved in the alternative for partial summary judgment on two of

11   its affirmative defenses, which seek to limit the amount of economic damages that plaintiff may

12   recover if she prevails at trial on claims that entitle her to that damages remedy.  Specifically,

13   defendant Nexstar argues that plaintiff's economic damages are limited by the after-acquired

14   evidence doctrine and due to her failure to mitigate her damages by seeking replacement

15   employment.  (Doc. Nos. 100, 100-1.)

16      According to Nexstar, plaintiff is eligible to recover economic damages (e.g., back pay,

17   lost wages) only on her claims for gender discrimination, retaliation, wrongful termination, and

18   IIED, and not on her harassment claim.  (Doc. No. 116 at 18–20.)  At the hearing on the pending

19   motions, Nexstar clarified that because it has moved for summary judgment on each of those

20   claims and plaintiff's "remaining claims of harassment do not award the same damages as [those]

21   claims," its alternative arguments regarding limitations on economic damages would be rendered

22   moot by the court's granting summary judgment in Nexstar's favor as to those claims.  (*Id.* at 18–

23   20.)  The court notes, however, that the parties have not actually raised, briefed, or argued the

24   issue of what types of damages plaintiff may be entitled to if she were to prevail on her

25   harassment claim—the sole remaining claim brought against defendant Nexstar in this action.[18]

26

27   ───────────────

    [18]  At the hearing on the pending motions, plaintiff countered defendants' assertion and stated that
28   that she would still be entitled to economic damages "as part of her damages for the hostile work
    environment."  (Doc. No. 116 at 22.)  Though plaintiff did not provide authority on this point.

1   Therefore, the court will not resolve that issue at this time.

2          Given Nexstar's position in this regard, the court will deny Nexstar's alternative motion

3   for partial summary judgment as having been rendered moot by the rulings indicated above.  The

4   court's denial of Nexstar's alternative motion on its affirmative defenses is without prejudice to

5   Nexstar raising these defenses at a later time if it chooses to do so, and the court's denial should

6   also not be interpreted as an endorsement of Nexstar's assertion that economic damages are not

7   awarded for harassment claims.

8   **D.     Defendant Mendoza's Motion for Summary Judgment on His Affirmative Defenses**

9          Defendant Mendoza moves for summary judgment on the same two affirmative defenses

10  to limit plaintiff's recovery of economic damages.  (Doc. Nos. 102, 102-1.)  Unlike defendant

11  Nexstar, defendant Mendoza did not move for summary judgment on either of plaintiff's two

12  claims against him—FEHA sexual harassment and IIED.

13         According to defendant Mendoza, plaintiff's remedies with respect to her claims against

14  him are limited by the after-acquired evidence doctrine and by her failure to mitigate her

15  damages.  (Doc. No. 116 at 15–16.)  However, when asked at the hearing on the pending motions

16  for authority to support that position, defendant Mendoza was unable to provide the court with

17  any authority that he—an individual defending against a sexual harassment claim and IIED

18  claim—could invoke the after-acquired evidence doctrine to limit plaintiff's recovery of damages.

19  (*Id.*)  Indeed, defendant Mendoza has cited only to cases involving wrongful termination and

20  discrimination claims predicated on a termination in arguing that the doctrine applies and that

21  plaintiff failed to mitigate her damages.  (Doc. No. 102-1 at 11–12.)  Nevertheless, at the hearing,

22  defendant Mendoza agreed with defendant Nexstar that the court need not rule on their arguments

23  regarding their affirmative defenses if the court granted Nexstar's motion for summary judgment.

24  (Doc. No. 116 at 17, 21–22.)

25         Accordingly, and for the same reasons as explained above, the court will deny defendant

26  Mendoza's motion for summary judgment as having been rendered moot by the rulings

27  announced above.  Here too, the court's denial of defendant Mendoza's motion is without

28  prejudice to him raising these defenses at a later time, if he chooses to do so and has authority to

1  support his contention that such defenses are applicable to limit plaintiff's recovery of economic

2  damages specifically as to her claims brought against him.

3  **CONCLUSION**

4      For the reasons set forth above,

5      1.        Defendant Nexstar's motion for partial summary judgment (Doc. No. 100) is

6      granted as follows:

7            a.     Defendant Nexstar's motion for summary judgment on plaintiff's FEHA

8      gender discrimination claim is granted;

9            b.     Defendant Nexstar's motion for summary judgment on plaintiff's FEHA

10      retaliation claim is granted;

11            c.     Defendant Nexstar's motion for summary judgment on plaintiff's

12      wrongful termination in violation of public policy claim is granted;

13            d.     Defendant Nexstar's motion for summary judgment on plaintiff's IIED

14      claim is granted; and

15            e.     Defendant Nexstar's alternative motion for partial summary judgment on

16      its affirmative defenses is denied, without prejudice, as having been

17      rendered moot;

18      2.        Defendant Mendoza's motion for partial summary judgment on its affirmative

19      defenses (Doc. No. 102) is denied, without prejudice, as having been rendered

20      moot; and

21      3.        The parties are directed to contact Courtroom Deputy Jami Thorp at

22      JThorp@caed.uscourts.gov, within ten days of service of this order regarding the

23      re-scheduling of the Final Pretrial Conference and Jury Trial dates in this action.

24

25  IT IS SO ORDERED.

26      Dated:   **February 24, 2021**

27                                  UNITED STATES DISTRICT JUDGE

28